JUDGE CARTER



Robin L. Cohen
Adam S. Ziffer
KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
212-506-1700
*Attorneys for Plaintiff Medidata Solutions, Inc.*

RECEIVED
FEB 06 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEDIDATA SOLUTIONS, INC. | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| FEDERAL INSURANCE COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Medidata Solutions, Inc. ("Medidata"), by and through its undersigned attorneys, as and for its Complaint against Federal Insurance Company ("Federal"), alleges as follows:

**PRELIMINARY STATEMENT**

1.    This action is for breach of contract and declaratory relief arising out of Federal's unjustified refusal to provide coverage under an insurance policy it sold to Medidata.

2.    Medidata is the named insured under Federal Executive Protection Portfolio Policy No. 8212-1392 (the "Policy"), which specifically provides coverage for losses resulting from "Computer Fraud," "Funds Transfer Fraud," and "Forgery."

3.    Medidata was the victim of an international wire transfer fraud in which certain mid-level employees in the Company's finance department were deceived by emails

from perpetrators of the fraud forged to appear as if they were coming from a Medidata executive, resulting in the transfer of approximately $4.8 million to an overseas account.

4.      The forged emails, which appeared on the surface identical to emails sent from the executive's real email account, led to one fraudulent wire transfer of approximately $4.8 million, but fortunately the fraud was discovered before a second wire transfer requested by the perpetrators was completed.

5.      Medidata purchased the Policy, and the Policy is designed, to protect Medidata against precisely the type of loss it has now incurred as a result of the fraudulent wire transfer.  Yet despite the fact that Medidata paid its premiums, gave prompt notice of the fraud to Federal, and cooperated fully and completely with Federal's inquiry into the fraud, Federal has failed and refused to pay Medidata's claim for coverage under the Policy (the "Claim").  This refusal to pay constitutes a breach of Federal's contractual obligations.

6.      Medidata seeks a declaration that there is coverage for the Claim under the Policy and damages for breach of contract due to Federal's unreasonable failure to honor its obligation under the Policy to cover the Claim.

**THE PARTIES**

7.      Plaintiff Medidata is a Delaware corporation with its principal place of business in New York, New York.

8.      Upon information and belief, Defendant Federal is an insurance company organized under the laws of the State of Indiana with its principal place of business in Warren, New Jersey.  Upon information and belief, Federal is authorized to sell or write insurance in New York and, at all material times, has conducted and continues to conduct substantial insurance business in the State of New York, including engaging in the business of selling insurance,

investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

**FACTUAL ALLEGATIONS**

**I.      The Federal Policy**

11.     In consideration of significant premiums paid to cover exactly the type of loss at issue here, Federal sold the Policy to Medidata for the policy period June 25, 2014 to June 25, 2015.

12.     The Policy provides coverage for a wide variety of criminal and fraudulent activity, including "Computer Fraud," "Funds Transfer Fraud," and "Forgery."

13.     The Policy provides "Limits of Liability" for its Forgery Coverage, Computer Fraud Coverage, and Funds Transfer Fraud Coverage of $5,000,000, subject to a $50,000 retention.

14.     The Policy provides "Computer Fraud Coverage" for "direct loss of **Money**, **Securities** or **Property** sustained by an **Organization** resulting from **Computer Fraud** committed by a **Third Party**."[1]

15.     **Money** is defined as "currency [or] bank notes."

---

[1] All emphasized terms appear in boldface in the Policy.

16.   **Organization** is defined as "any organization designated in Item 4 of the Declarations for this coverage section." Item 4 of the Declarations for the Crime Coverage Section lists "Medidate [sic] Solutions, Inc., and its subsidiaries."

17.   **Third Party** is defined as "a natural person other than (a) an **Employee**; or (b) a natural person acting in collusion with an **Employee**."

18.   **Computer Fraud** is defined as: "[T]he unlawful taking or fraudulently induced transfer of **Money**, **Securities** or **Property** resulting from a **Computer Violation**."

19.   **Computer Violation** includes both "the fraudulent (a) entry of **Data** into . . . a **Computer System**; [and] (b) change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format . . . directed against an **Organization**."

20.   **Data** is defined under the Policy to include any "representation of information."

21.   The Policy definition of "**Computer System**" includes "a computer and all input, output, processing, storage, off-line media library and communication facilities . . . owned . . . by an **Organization**."

22.   The Policy also provides "Funds Transfer Fraud Coverage" for "direct loss of **Money** or **Securities** sustained by an **Organization** resulting from **Funds Transfer Fraud** committed by a **Third Party**."

23.   **Funds Transfer Fraud** is defined as: "[F]raudulent electronic . . . instructions . . . purportedly issued by an **Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent."

24.     The Policy also provides "Forgery Coverage" for "direct loss sustained by an **Organization** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**" and provides a non-exclusive list of examples.

25.     "**Forgery**" is defined as "the signing of the name of another natural person . . . with the intent to deceive . . . . Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures."

## II.     Medidata is the Victim of a Fraud

26.     Medidata works with the medical and biotechnology research industry, providing applications to more efficiently collect data during studies and tools to help researchers analyze the data collected during studies.

27.     On September 16, 2014, at 11 AM, an employee in Medidata's Accounts Payable department ("Employee 1") received an email from a person purporting to be a Medidata executive (the "Fake Executive"). In the email, the Fake Executive requested a transfer of funds, and copied a purported attorney named Michael Meyer (the "Fake Attorney").

28.     The email was altered so that the "From" line of the email showed an actual email address for an executive at Medidata, and also included the Medidata executive's picture and signature in the email, further making it appear as if it had actually been sent by the Medidata executive.

29.     Throughout the afternoon of September 16, Employee 1 and the Fake Attorney communicated back and forth via email and phone calls, and the Fake Attorney told Employee 1 how much money the Fake Executive wanted to be transferred.

30.     Employee 1 informed the Fake Attorney that a wire from Medidata's account would require the approval of two authorized signatories and provided the names and email addresses of three authorized signatories.

31.     At 3:30 PM, the Fake Executive emailed two of the listed signatories ("Employee 2" and "Employee 3") and requested that they approve the wire that Employee 1 was going to prepare. The Fake Executive then requested that $4,770,226.00 be wired to a bank in China. These emails also reflected an actual email address for an executive at Medidata in the email's "From" line, and also included the Medidata executive's picture and signature in the email.

32.     Employee 1 prepared the wire in the online system of Medidata's bank, and while Employee 2 and Employee 3 had questions for Employee 1, they both were ultimately convinced by the fraud that these funds were pursuant to a legitimate request by a Medidata executive, and approved the transfer.

33.     Once Employees 2 and 3 approved the transfer, Medidata's bank executed the wire transfer based on the instructions provided by Employee 1 and the $4,770,226.00 was transferred.

34.     On September 18, the Fake Attorney emailed Employee 1 requested an additional wire transfer. The Fake Executive then emailed Employee 1 and requested $4,827,200.00 to be wired to the same account in China. Before approving this second transfer, Employee 3 contacted the real Medidata executive to confirm the transfer instruction, and the fraud was discovered.

35.     Medidata reported the fraud to the authorities, but the Fake Executive and Fake Attorney were never discovered and the transferred funds were not recovered.

### III.    Federal's Denial of Coverage

36.     Medidata promptly notified Federal of the fraudulent wire and made the Claim for coverage under the Policy.

37.     Federal acknowledged receipt of the Claim and held a telephone conference with Medidata on December 4, 2014, to discuss the facts of the fraud.  Medidata and Federal discussed coverage under the Computer Fraud Coverage, the Funds Transfer Fraud Coverage, and the Forgery Coverage.

38.     Coverage exists under the Computer Fraud Coverage because by altering the "From" line of the emails sent to the Medidata Employees to make them appear as if they came from a Medidata executive's email account, the Fake Executive misrepresented the information as to who sent those emails.  Because **Data** is defined in the Policy as any "representation of information," the act of changing the email address in the "From" line was a fraudulent entry of **Data** or a change to **Data** elements, directed against Medidata.  Thus, there was a **Computer Violation**, and because that **Computer Violation** resulted in a fraudulently induced transfer of **Money**, there was **Computer Fraud**.

39.     Coverage also exists under the Funds Transfer Fraud Coverage because once Employees 1, 2, and 3 believed that the emails from the Fake Executive were really from a Medidata executive based on the altered "From" line, Employees 1, 2, and 3 became unwitting participants in the fraud and expressed the instructions of the perpetrators of the fraud, not Medidata.  Fraudulent electronic instructions were sent to a financial institution, Medidata's bank, when Employee 1 set up the online wire transfer and Employees 2 and 3 approved it.  Because Medidata's executive did not request or approve the transfers, the funds were not wired with Medidata's knowledge or consent.  Thus, there was a **Funds Transfer Fraud**.

40.     There is also coverage under the Forgery Coverage because the Fake Executive wrote several emails pretending to be a Medidata executive, with the intent to deceive a

Medidata employee into a fraudulent transfer of funds, and electronically signed those emails with the actual name of the Medidata executive. This satisfies the Policy definition of **Forgery**.

      41.     On December 24, 2014, Federal denied coverage for the Claim, stating that coverage was not available under the Computer Fraud Coverage, the Funds Transfer Fraud Coverage, or the Forgery Coverage.

      42.     By denying coverage when the Claim was covered under the Policy and all prerequisites to coverage were met, Federal breached its contractual obligation to Medidata.

<u>**FIRST CAUSE OF ACTION**</u>

(Breach of Contract)

      43.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 42 of this Complaint as if fully set forth herein.

      44.     The Policy constitutes a valid and enforceable contract between Federal and Medidata because Medidata was the named insured under the Policy.

      45.     Medidata has paid all premiums, provided prompt notice of the claim, and otherwise performed all obligations required of it under the Policy.

      46.     Under the terms of the Policy, Federal must pay up to $5,000,000 for a direct loss of **Money** that comes within the Policy definitions of **Computer Fraud**, **Funds Transfer Fraud**, or **Forgery**.

      47.     As detailed above, the facts of the Claim come within all three of those Policy provisions.

      48.     Federal has not paid any amounts to Medidata in connection with the Claim. By failing to provide coverage for the Claim, Federal has breached the terms of the Policy.

8

49.     As a direct and proximate result of Federal's breach of the Policy, Medidata has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law.

## SECOND CAUSE OF ACTION

(Declaratory Relief)

50.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     Pursuant to the terms of the Policy, Federal is obligated to pay, up to the $5,000,000 limit of liability, for a direct loss of **Money** that comes within the Policy definitions of **Computer Fraud**, **Funds Transfer Fraud**, or **Forgery**.

52.     As detailed above, the facts of the Claim come within all three of those Policy provisions.

53.     Federal disputes its legal obligation to pay the Claim.

54.     Pursuant to 28 U.S.C. § 2201, Medidata is entitled to a declaration by this Court of Federal's obligations under the Policy.

55.     An actionable and justiciable controversy exists between Medidata and Federal concerning the proper construction of the Policy, and the rights and obligations of the parties thereto, with respect to the Claim for the fraudulent wire transfer on September 16.

56.     Medidata is entitled to a declaration declaring that there is coverage available for the fraudulent wire transfer on September 16 under the Policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(a)     On the First Cause of Action, Plaintiff requests that the Court enter judgment against Federal, awarding Plaintiff damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(b)     On the Second Cause of Action, Plaintiff requests that this Court enter a declaratory judgment in favor of Medidata against Federal, declaring that Federal is obligated to pay Medidata, up to the applicable limits of the Policy, for the Claim; and

(c)     Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      New York, New York
            February 6, 2015

                        KASOWITZ, BENSON, TORRES
                          & FRIEDMAN LLP

                        By: _____
                             Robin L. Cohen
                             Adam S. Ziffer

                        1633 Broadway
                        New York, New York 10019
                        Telephone: (212) 506-1700
                        Fax:  (212) 506-1800

                        *Attorneys for Plaintiff Medidata Solutions, Inc.*