**Executive Protection Portfolio**

PREMIUM BILL

Insured:   MEDIDATA SOLUTIONS INC.                                    Date:   07/16/2014

Producer:   WILLIAM GALLAGHER ASSOCIATES INSURANCE
            BROKERS, IN
            470 ATLANTIC AVENUE
            BOSTON, MA 02210-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Product:      Executive Protection Portfolio

Policy Number:      8212-1392

Policy Period:  June 25, 2014 to June 25, 2015

NOTE: - PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL
WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE.

| Product | Effective Date | Premium |
|---|---|---|
| CRIME | 06/25/14 | $29,500.00 |
| SPECIAL COVERAGE | 06/25/14 | $1,900.00 |
|  |  |  |
|  |  |  |

* For Kentucky policies, amount displayed includes tax and collection fees.

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $31,400.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $31,400.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 14-02-1324i (Rev. 1/99)

FIC001322

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)
### Insuring Company:  Federal Insurance Company

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), effective December 26, 2007, this policy makes available to you insurance for losses arising out of certain acts of terrorism.  Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

10-02-1281 (Ed. 1/2003)

FIC001323

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 1/2003)

FIC001324

# IMPORTANT NOTICE TO POLICYHOLDERS

Insuring Company: Federal Insurance Company

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers").  Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478.  Additional information may be available from your producer.

Thank you for choosing Chubb.

10-02-1295 (ed. 6/2007)

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio General Terms and Conditions Section (Fed - NY)
Effective date of
this endorsement:   June 25, 2014                     Company:   Federal Insurance Company

Endorsement No.

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

## NEW YORK NOTICE TO APPLICATION, DECLARATIONS AND POLICY

The Executive Liability and Entity Securities Liability Coverage Section, the Employment Practices Liability Coverage Section and the Fiduciary Liability Coverage Section provide coverage on a claims-made basis. This NOTICE is for prospective insureds considering the purchase of these claims-made coverage sections.

**PRIOR ACTS**: If a claims-made coverage section contains a "retroactive date" or a "prior acts date," that coverage section provides no coverage for claims arising out of incidents, occurrences or wrongful acts which take place prior to that retroactive date or prior acts date.

**CLAIMS MADE DURING POLICY PERIOD**: Claims-made coverage covers only claims actually made or incidents reported against the insured while the applicable coverage section remains in effect or claims first made during an applicable extended reporting period.   All coverage under each coverage section ceases upon the termination date, except for the automatic extended reporting period coverage, unless the insured purchases optional extended reporting period coverage.

**EXTENDED REPORTING PERIOD**: The policy provides an automatic extended reporting period of sixty (60) days from the termination or expiration date of the applicable claims-made coverage section.   The insured is entitled under New York regulation to purchase an optional extended reporting period of one (1) year for the Fiduciary Liability Coverage Section, the Employment Practices Liability Coverage Section and, as a for-profit entity, for the Executive Liability and Entity Securities Liability Coverage Section. If an optional extended reporting period is not purchased and the subsequent policy does not provide full prior acts coverage or is an occurrence policy, there may be gaps in coverage.   Because an unlimited extended reporting period is not available under the policy, if an optional extended reporting period is purchased, there may be potential gaps in coverage after the expiration of the optional extended reporting period.

**CLAIMS-MADE POLICY MATURITY**: During the first several years of the claims-made relationship, claims-made rates are comparatively lower than occurrence rates.   An insured can expect substantial annual premium increases, independent of overall rate level increases, until the claims-made relationship reaches maturity.

14-02-8866 (10/2003 Ed.)                     Page 1

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

***Executive Protection Portfolio*** <sup>SM</sup>
*General Terms and Conditions Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated under the laws of Indiana.

Policy Number: 8212-1392

THE EXECUTIVE LIABILITY AND ENTITY SECURITIES LIABILITY, FIDUCIARY LIABILITY, AND EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR AN APPLICABLE EXTENDED REPORTING PERIOD. THE APPLICABLE LIMIT(S) OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF "DEFENSE COSTS" AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE RETENTION, UNLESS OTHERWISE SPECIFIED HEREIN. THE COMPANY WILL NOT BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT UPON EXHAUSTION OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.

| Item 1. | **Parent Organization:** | MEDIDATA SOLUTIONS INC. |
|---|---|---|
| | Principal Address: | 350 HUDSON STREET, 9th Floor NEW YORK, NY 10014 |

Item 2.   **Policy Period:**   From  12:01 A.M. on   June 25, 2014
To       12:01 A.M. on   June 25, 2015
Local time at the address shown in Item 1.

Item 3.   Coverage Summary
Description:
GENERAL TERMS AND CONDITIONS
CRIME
SPECIAL COVERAGE

Item 4.   Termination of
Prior Bonds or Policies: 8212-1392  (Jun 25, 2013 to Jun 25, 2014)

14-02-7302NY (Ed. 1/2004)          Page 1 of 8

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers below, but it shall not be valid unless also signed below by a duly authorized representative of the Company.

**FEDERAL INSURANCE COMPANY**

_____
Secretary

_____
President

_____
Date

_____
Authorized Representative

14-02-7302NY (Ed. 1/2004)          Page 2 of 8

FIC001328

*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this policy, the Company and the Insureds agree as follows:

*Territory*

1.  Coverage shall extend anywhere in the world.

*Terms and Conditions*

2.  Except for these General Terms and Conditions or unless stated to the contrary in any coverage section of this policy, the terms and conditions of each coverage section shall apply only to that coverage section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any coverage section, the terms and conditions of such coverage section shall control for purposes of that coverage section. Any defined term referenced in these General Terms and Conditions but defined in a coverage section shall, for purposes of coverage under that coverage section, have the meaning set forth in that coverage section.

*Definitions*

3.  When used in this policy:

    **Claim** shall have the meaning set forth in the applicable coverage section.

    **Insured** shall have the meaning set forth in the applicable coverage section.

    **Parent Organization** means the organization designated in Item 1 of the Declarations of these General Terms and Conditions.

    **Policy Period** means the period of time specified in Item 2 of the Declarations of these General Terms and Conditions, subject to prior termination in accordance with Subsection 11 below. If this period is less than or greater than one year, then the limits of liability specified in the Declarations for each coverage section shall be the Company's maximum limit of liability under such coverage section for the entire period.

*Limits of Liability and Retentions*

4.  Unless stated to the contrary in any coverage section, the limits of liability and retentions shown for each coverage section are separate limits of liability and separate retentions pertaining to the coverage section for which they are shown. Unless stated to the contrary in any coverage section of this policy, the payment of a retention under one coverage section shall not constitute payment of, and shall not reduce, the applicable retention under any other coverage section.

FIC001329

*Executive Protection Portfolio*<sup>SM</sup>
*General Terms and Conditions Section*

*Notice*

5.   Any notice to the Company with respect to any coverage section shall designate the coverage section under which notice is being given and shall be treated as notice only under the coverage section(s) so designated.

Notice to the Company of a **Claim**, or of circumstances which could give rise to a **Claim**, shall be given in writing addressed to:

> Attn: Claims Department
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

Notice of a **Claim** may also be given in writing to a licensed agent of the Company in the state of New York, with particulars sufficient to identify the person or entity entitled to coverage under this policy.  Such notice shall be deemed notice to the Company.  If notice of a **Claim** is given to such agent it shall be effective on the date of receipt by such agent; if given to the Company it shall be effective on the date of receipt by the Company.

All other notices to the Company shall be given in writing addressed to:

> Attn: Underwriting
> Chubb Group of Insurance Companies
> 82 Hopmeadow Street
> Simsbury, Connecticut 06070-7683

Any such notice shall be effective on the date of receipt by the Company at such address.

Failure by an **Insured** to give a notice required within a prescribed time will not invalidate any coverage that would have been available if it is shown that it was not reasonably possible to give such notice within the prescribed time, and that notice was given as soon as reasonably possible.

*Valuation and Foreign Currency*

6.   All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any coverage section, if a judgment is rendered, a settlement is denominated or any element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or the element of loss is due, respectively.

*Subrogation*

7.   In the event of any payment under this policy, the Company shall be subrogated to the extent of such payment to all the **Insured**'s rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insured**.

14-02-7302NY (Ed. 1/2004)          Page 4 of 8

### Action Against the Company

8. No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy. No person or entity shall have any right under this policy to join the Company as a party to any action against any **Insured** to determine such **Insured**'s liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**. If judgment against any **Insured** remains unsatisfied thirty (30) days after the serving of notice of entry of judgment upon such **Insured** (or his, her or its attorney) and upon the Company, then except during a stay or limited stay of execution against such **Insured** on such judgment, an action may be maintained against the Company under this policy for the amount of such judgment. Nothing herein is intended, however, nor shall it be construed, to obligate the Company to make any payment it would not otherwise be obligated to make under the terms, conditions, limitations and endorsements of this policy, or to pay any **Loss** in excess of the then-available applicable Limit of Liability under this policy.

### Parent Organization Rights and Obligations

9. By acceptance of this policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: the payment of premiums and the receiving of any return premiums that may become due under this policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice provided for in this policy (except the giving of notice to apply for an Extended Reporting Period); the adjustment of loss amounts; and the receipt or enforcement of payment of loss (and the **Parent Organization** further agrees that it shall be responsible for application of any such payment as provided in this policy). Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

### Alteration and Assignment

10. No change in, modification of, or assignment of interest under this policy shall be effective except when made by written endorsement to this policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

### Termination of Policy or Coverage Section

11. This policy or any coverage section shall terminate at the earliest of the following times:

    (a)   if terminated during the first sixty (60) days this policy is in effect, twenty (20) days after the Company mails or delivers to the **Parent Organization** written notice of termination from the Company;

    (b)   if terminated after this policy has been effect for sixty (60) days, fifteen (15) days after the Company mails or delivers to the **Parent Organization** written notice of termination from the Company for one or more of the following reasons:

        (i)   nonpayment of premium;

        (ii)   conviction of a crime arising out of an act increasing the hazard for which coverage is provided;

(iii)    fraud or material misrepresentation in obtaining this policy or in the presentation of a claim or loss under this policy;

(iv)    discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard for which coverage is provided, and which occurred subsequent to the inception of the current **Policy Period**;

(v)    material physical change in any property for which coverage is provided or material change in the nature or extent of the risk;

(vi)    determination by the superintendent of insurance that the continuation of this policy would violate, or would place the Company in violation of, any provision of the New York Insurance Laws; or

(vii)    where the Company has reason to believe, in good faith and with sufficient cause, that there is a probable risk or danger that the **Insured** will destroy, or permit to be destroyed, property for which coverage is provided for the purpose of collecting insurance proceeds; or

(c)    upon the effective date of termination by the **Parent Organization**; provided that, the Company receives written notice of termination from the **Parent Organization** before such effective date;

(d)    at such other time as may be agreed upon by the Company and the **Parent Organization**; or

(e)    upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations of these General Terms and Conditions, or any extension thereof, if either the **Parent Organization** or the Company does not renew this policy. If the Company does not renew this policy, it will provide notice of nonrenewal as set forth in paragraph (g) of this Subsection 11.

(f)    The Company shall refund the unearned premium computed at customary short rates if this policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

(g)    If the Company (i) non-renews this policy, or (ii) conditions its renewal upon a change in limits, change in the type of coverage, reduction of coverage, increased retentions or addition of exclusions, or upon increased premiums in excess of ten percent (10%) of the expiring rate (exclusive of premiums attributable to increased exposure subsequent to issuance of this policy or at the request of the **Parent Organization** or as a result of experience rating or retrospective rating), the Company shall provide notice to the **Parent Organization** as follows.

(i)    The Company will mail or deliver to the **Parent Organization** between sixty (60) and one hundred twenty (120) days advance written notice containing the specific reason or reasons for nonrenewal or conditional renewal, the amount of any premium increase, the nature of any other proposed changes and the **Parent Organization's** rights, if any, to

**Executive Protection Portfolio** <sup>SM</sup>
*General Terms and Conditions Section*

coverage and the duration of such coverage.  Such notice will not be provided in the event that the **Parent Organization** or its agent or broker of record has mailed or delivered written notice that this policy has been replaced or is no longer desired.  Additionally, if the Company provides notice of nonrenewal and subsequently extends the **Policy Period** for ninety (90) days or less, no additional notice of nonrenewal will be given.

(ii)   If before the expiration date in Item 2 of the Declarations of these General Terms and Conditions the Company provides an incomplete or late conditional renewal notice, coverage hereunder will remain in effect on the same terms and conditions and at the lower of the current rates or the rates for the prior period until sixty (60) days after proper notice is mailed, unless the **Parent Organization** elects to cancel sooner.  If, however, the **Parent Organization** elects to accept the terms, conditions and rates of the conditional renewal notice and renews this policy on that basis, then such terms, conditions and rates will govern upon: (A) the expiration of such sixty (60) day period, if notice of conditional renewal was provided to the **Parent Organization** less than thirty (30) days before the policy expiration date; or (B) the policy expiration date, if notice of conditional renewal was provided to the **Parent Organization** at least thirty (30) days before the policy expiration date.

(iii)   If the **Policy Period** is extended due to late notice of nonrenewal or conditional renewal, then the applicable aggregate Limit(s) of Liability will be increased in proportion to the period for which the **Policy Period** is extended, provided that if the **Parent Organization** accepts the terms, conditions and rates of a conditional renewal notice, such increase will be inapplicable and, instead, new aggregate limit(s) of liability applicable to the renewal period shall become effective as of the inception date of the renewal policy.

(iv)   If the Company does not provide notice of nonrenewal or conditional renewal before the policy expiration date set forth in Item 2 of the Declarations of these General Terms and Conditions, then the **Parent Organization** may purchase coverage on the same terms and conditions as this policy for another policy year at the lower of the premium rates for such new policy year or for the immediately preceding policy year.

(h)   The Company shall mail or deliver a copy of any notice of nonrenewal or termination of this policy by the Company to the agent or broker of record, if any, at its last address known to the Company.

*(i)      Any notice of nonrenewal or termination of this policy by the Company shall state the specific reason(s) for, and the effective date of, such nonrenewal or termination.* **Termination of Prior Bonds or Policies**

12.   Any bonds or policies issued by the Company or its affiliates and specified in Item 4 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this policy.

FIC001333

*Executive Protection Portfolio* <sup>SM</sup>
*General Terms and Conditions Section*

### Bankruptcy

13.    Bankruptcy or insolvency of any **Insured** or any **Insured's** estate shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this policy.

### Headings

14.    The descriptions in the headings and sub-headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Schedule of Forms

To be attached to and form part of                     Company:   Federal Insurance Company
Policy No.   8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

Executive Protection Portfolio General Terms and Conditions Section (Fed - NY)

14-02-14839 (6/12 ed.)

14-02-9228 (2/10 ed.)

Executive Protection Portfolio Crime Coverage Section (Fed - NY)

14-02-10894 (5/05 ed.)

14-02-19672 (3/13 ed.)

14-02-8592 (7/05 ed.)

14-02-8754 (8/03 ed.)

14-02-8907 (10/04 ed.)

14-02-8923A (4/07 ed.)

14-02-8925 (11/03 ed.)

14-02-8926 (11/03 ed.)

14-02-8927 (11/03 ed.)

14-02-8928 (11/03 ed.)

14-02-8931A (4/08 ed.)

14-02-8932 (11/03 ed.)

14-02-8933 (11/03 ed.)

14-02-9146 (2/04 ed.)

14-02-9261 (4/04 ed.)

14-02-9262 (4/04 ed.)

Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

14-02-11774 (2/13 ed.)

14-02-11797NY (3/08 ed.)

14-02-12302 (8/06 ed.)

14-02-15293 (8/09 ed.)

14-02-16655 (12/09 ed.)

Form 14-02-0854 (Ed. 04-01)

# Schedule of Forms

To be attached to and form part of
Policy No.   8212-1392

Company:   Federal Insurance Company

Issued to:   MEDIDATA SOLUTIONS INC.


14-02-18396 (10/13 ed.)

14-02-8014 (4/03 ed.)

14-02-8753 (8/03 ed.)

14-02-8806A (2/05 ed.)

14-02-8900 (2/08 ed.)

Form 14-02-0854 (Ed. 04-01)

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

NEW YORK AMENDATORY ENDORSEMENT – LATE NOTICE

In consideration of the premium charged, it is agreed that:

(1)  Subject to the terms and conditions of this insurance, failure to provide notice of a **Claim** pursuant to the
reporting and/or notice provisions of this policy shall not invalidate any coverage that would have
otherwise been available unless the failure to provide such timely notice has prejudiced the Company;
except as provided in paragraph (2) below.

(2)  Failure to provide notice of a **Claim** pursuant to the reporting and/or notice provisions of this policy shall
not invalidate any coverage if it is shown that it was not reasonably possible to give such notice within the
prescribed time, and that such notice was given as soon as reasonably possible thereafter.

(3)  The burden of proving prejudice for failure to provide timely notice shall be on:

(a)  the Company if the notice was provided within two (2) years of the time required under this policy;
or

(b)  the **Insured,** injured person, or claimant if the notice was provided more than two (2) years after
the time required under this policy.

(4)  Notwithstanding the above paragraph, an irrebuttable presumption of prejudice shall apply if, prior to
notice:

(a)  the **Insured's** liability has been determined by a court of competent jurisdiction or by binding
arbitration; or

(b)  the **Insured** has entered into any settlement or other compromise.

(5)  Except as expressly set forth in this endorsement, nothing herein shall be construed:

(a)  to amend provisions in the policy stating that claims shall be made during the **Policy Period**, any
renewal thereof, or any extended reporting period; or

(b)  to duplicate coverage under multiple policy periods.

(6)  With respect to a **Claim** for death or personal injury, as that term is defined by the New York
Insurance Law, if the Company disclaims liability or denies coverage based upon the failure to
provide timely notice, then, notwithstanding any other provision in this policy, the injured person
or other claimant may maintain an action directly against the Company. In such an action, the

14-02-14839 (06/2012)                              Page 1

sole question will be the Company's disclaimer or denial based on the failure to provide timely notice, unless within sixty (60) days of such disclaimer or denial, the Company or the **Insured**:

(a)     initiate an action to declare the rights of the parties under this policy; and

(b)     name the **Insured** as a party to such action.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio General Terms and Conditions Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other similar laws or regulations prohibit the coverage provided by this insurance.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

14-02-9228 (2/2010)                    Page 1

FIC001339

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

***Executive Protection Portfolio***
*SM*

*Crime Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana.

**READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization**:
MEDIDATA SOLUTIONS INC.
350 HUDSON STREET, 9th Floor
NEW YORK, NY 10014

Item 2. Insuring Clauses:

| | | Limits of Liability: |
|---|---|---|
| (A) | Insuring Clause  1 - Employee Theft Coverage: | $5,000,000.00 |
| (B) | Insuring Clause  2 - Premises Coverage: | $5,000,000.00 |
| (C) | Insuring Clause  3 - In Transit Coverage: | $5,000,000.00 |
| (D) | Insuring Clause  4 - Forgery Coverage: | $5,000,000.00 |
| (E) | Insuring Clause  5 - Computer Fraud Coverage: | $5,000,000.00 |
| (F) | Insuring Clause  6 - Funds Transfer Fraud Coverage: | $5,000,000.00 |
| (G) | Insuring Clause 7 - Money Orders And Counterfeit Fraud Coverage: | $5,000,000.00 |
| (H) | Insuring Clause  8 - Credit Card Fraud Coverage: | $5,000,000.00 |
| (I) | Insuring Clause  9 - Client Coverage: | $5,000,000.00 |
| (J) | Insuring Clause 10 - Expense Coverage: | $250,000.00 |

Item 3.  Retention:

$50,000.00

Item 4.

**Organization**
Medidate Solutions, Inc., and its subsidiaries

14-02-7307NY (Ed. 1/2004)          Page 1 of 17

FIC001340

*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:

*Insuring Clauses*

*Employee Theft Coverage Insuring Clause 1*

1.     The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

*Premises Coverage Insuring Clause 2*

2.     The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

    (a)   the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

    (b)   the actual destruction or disappearance of **Money** or **Securities**,

    within or from the **Premises** or **Banking Premises**.

    Coverage under this Insuring Clause shall also include:

    (i)   direct loss of or damage to **Property** which results from **Robbery** or attempted **Robbery** within the **Premises**;

    (ii)   direct loss of or damage to **Property** contained within any locked vault or safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises**;

    (iii)   damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises**; and

    (iv)   damage to the **Premises** which results from **Robbery** or **Safe Burglary**,

    committed by a **Third Party**.

*In Transit Coverage Insuring Clause 3*

3.     The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from:

    (a)   the unlawful taking of **Money** or **Securities** committed by a **Third Party**; or

    (b)   the actual destruction or disappearance of **Money** or **Securities**,

    while **In Transit** or while temporarily within the home of an **Employee** or an **Organization**.

FIC001341

*Executive Protection Portfolio* [SM]
*Crime Coverage Section*

Coverage under this Insuring Clause shall also include:

   (i)   direct loss of or damage to **Property** which results from **Robbery** while **In Transit**; and

   (ii)   direct loss which results from the unlawful taking of **Property** temporarily within the home of an **Employee** or an **Organization**,

committed by a **Third Party**.

*Forgery Coverage Insuring Clause 4*

4.   The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**, including:

   (a)   any check or draft made or drawn in the name of such **Organization** payable to a fictitious payee and endorsed in the name of such fictitious payee;

   (b)   any check or draft procured in a face to face transaction with such **Organization** or with one acting as the agent of such **Organization** by a **Third Party** impersonating another and made or drawn payable to the one impersonated and endorsed by a **Third Party** other than such one impersonated; and

   (c)   any payroll check, payroll draft or payroll order made or drawn by such **Organization** payable to bearer as well as to a named payee and endorsed by a **Third Party** other than such named payee without the authority of such named payee.

*Computer Fraud Coverage Insuring Clause 5*

5.   The Company shall pay the **Parent Organization** for direct loss of **Money, Securities** or **Property** sustained by an **Organization** resulting from **Computer Fraud** committed by a **Third Party**.

*Funds Transfer Fraud Coverage Insuring Clause 6*

6.   The Company shall pay the **Parent Organization** for direct loss of **Money** or **Securities** sustained by an **Organization** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

*Money Orders And Counterfeit Currency Fraud Coverage Insuring Clause 7*

7.   The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Money Orders And Counterfeit Currency Fraud** committed by a **Third Party**.

FIC001342

*Credit Card Fraud Coverage Insuring Clause 8*

8.    The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Credit Card Fraud** committed by a **Third Party**.

*Client Coverage Insuring Clause 9*

9.    The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

*Expense Coverage Insuring Clause 10*

10.    The Company shall pay the **Parent Organization** for:

(a)    **Investigative Expenses** resulting from any loss covered under Insuring Clauses 1 through 9 incurred by an **Organization**, but only if such covered loss under Insuring Clauses 1 through 9 is in excess of the Retention applicable to such covered loss;

(b)    **Computer Violation Expenses** resulting from any loss covered under Insuring Clause 1, 5 or 9 incurred by an **Organization**, but only if such covered loss under Insuring Clause 1, 5 or 9 is in excess of the Retention applicable to such covered loss.

No Retention shall apply to **Investigative Expenses** or **Computer Violation Expenses** covered under Insuring Clause 10.

**Definitions**

11.    When used in this coverage section:

**Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar financial institution.

**Client** means a customer of an **Organization** to whom such **Organization** provides goods or services under written contract or for a fee.

**Computer Fraud** means the unlawful taking or the fraudulently induced transfer of **Money**, **Securities** or **Property** resulting from a **Computer Violation**.

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are owned and operated or leased and operated by an **Organization**.

**Computer Violation** means the fraudulent:

(a)    entry of **Data** into or deletion of **Data** from a **Computer System**;

(b)    change to **Data** elements or program logic of a **Computer System**, which is kept in machine readable format; or

(c)   introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**,

directed against an **Organization**.

**Computer Violation Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to reproduce or duplicate damaged or destroyed **Data** or computer programs.  If such **Data** or computer programs cannot be duplicated from other **Data** or computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore such **Data** or computer programs to substantially the same level or operational capability existing immediately before the covered loss.  **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

**Credit Card Fraud** means the **Forgery** or alteration of, on or in any written instrument required in connection with any credit card issued to an **Organization** or, at the request of an **Organization**, to an **Employee**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are processed and stored in a **Computer System**.

**Discovery** or **Discovered** means an **Executive** or **Insurance Representative** has become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage section has occurred or acts have taken place that may subsequently result in a loss of a type covered by this coverage section.  This includes loss:

(a)   sustained prior to the inception date of any coverage under this coverage section;

(b)   which is within the applicable Retention as set forth in Item 3 of the Declarations for this coverage section; or

(c)   for which the exact amount or details are unknown.

**Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** acting alone in a **Theft** or **Forgery,** or acting in collusion with any **Employee** in a **Theft** or **Forgery**.

**Employee** means any:

(a)   natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time, seasonal, leased or temporary employee;

(b)   natural person volunteer while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service;

(c)   **Executive** while performing acts within the scope of the usual duties of an **Employee**; or

**Executive Protection Portfolio** <sup>SM</sup>
*Crime Coverage Section*

(d)   natural person fiduciary, trustee, administrator or other plan official, while in the regular service of an **ERISA Plan**, who is required to be bonded by an **Organization** in connection with such **ERISA Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

**ERISA Plan** means any Employee Benefit Plan, Pension Benefit Plan, or Welfare Benefit Plan, defined and required to be bonded under Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Executive** means any natural person specified below:

(a)   duly elected or appointed director, officer, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

(b)   in–house general counsel of an **Organization** chartered in the United States of America;

(c)   equivalent positions of (a) or (b) above in an **Organization** chartered in any other jurisdiction anywhere in the world; or

(d)   a partner of an **Organization** while engaged in the regular service of such **Organization.**

**Financial Instrument** means a check, draft or similar written promise, order or direction to pay a sum certain in **Money** that is made, drawn by or drawn upon an **Organization** or made or drawn by anyone acting as an **Organization's** agent, or that is purported to have been so made or drawn.

**Forgery** means the signing of the name of another natural person or organization, with the intent to deceive, but does not mean a signature that includes, in whole or in part, one's own name, with or without authority, in any capacity for any purpose.  Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

**Funds Transfer Fraud** means fraudulent electronic, telegraphic, cable, teletype, facsimile, telephone or written instructions (other than **Forgery**), purportedly issued by an **Organization**, and issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by such **Organization** at such institution, without such **Organization's** knowledge or consent.

**Insurance Representative** means any **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

**Insured** means any **Organization** and, for the purposes of Insuring Clause 1, any **ERISA Plan** or **Non-ERISA Plan**.

**In Transit** means being conveyed outside the **Premises**, from one person or place to another, by an **Organization** within the custody of:

FIC001345

(a)   an **Employee**; or

(b)   a person duly authorized by such **Organization** to have custody of such **Money**, **Securities** or **Property**.

Such conveyance begins immediately upon receipt of **Money**, **Securities** or **Property** by the person(s) described in (a) or (b) above from such **Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

**Investigative Expenses** means reasonable expenses, other than an **Organization's** internal corporate costs (such as **Salary**), incurred by an **Organization**, with the Company's prior written consent, to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

**Money** means currency, coin, bank notes and bullion.

**Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:

(a)   in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

(b)   in the regular course of business, of counterfeit United States of America or Canadian paper currency.

**Non-ERISA Plan** means any employee benefit plan not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by an **Organization** or jointly by an **Organization** and a labor organization for the benefit of **Employees** and which existed on or before the inception of this coverage section or which is created or acquired after the inception of this coverage section.

**Organization** means any organization designated in Item 4 of the Declarations for this coverage section.

**Premises** means the interior portion of a building occupied by an **Organization** in conducting its business.

**Property** means tangible property other than **Money** or **Securities**.

**Robbery** means the unlawful taking of **Money**, **Securities** or **Property** from the custody of an **Employee**, or other person (except a person acting as a watchman, porter or janitor) duly authorized by an **Organization** to have custody of such **Money**, **Securities** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such **Employee** or other person.

**Safe Burglary** means the unlawful taking of **Money**, **Securities** or **Property**, by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

FIC001346

*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

**Securities** means negotiable and non-negotiable instruments or contracts representing either **Money** or **Property**.

**Subsidiary**, either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors, members of the Board of Managers, or management committee members of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Theft** means the unlawful taking of **Money, Securities** or **Property** to the deprivation of:

(a)     an **Insured**, solely for the purposes of Insuring Clause 1; or

(b)     a **Client**, solely for the purposes of Insuring Clause 9.

**Third Party** means a natural person other than:

(a)     an **Employee**; or

(b)     a natural person acting in collusion with an **Employee**.

---

### Exclusions

12.     No coverage will be available under this coverage section for:

(a)     loss resulting directly or indirectly from any authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion 12(a) shall not apply to otherwise covered loss under Insuring Clause 1 which results in improper financial gain to an **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

(b)     loss of any trade secret, confidential processing method or other confidential information of any kind;

(c)     loss due to **Theft** or **Forgery** committed by a partner of an **Organization**, whether acting alone or in collusion with others; provided that, if such **Theft** or **Forgery** would otherwise be covered under Insuring Clause 1 or 9, this Exclusion 12(c) shall not apply to the extent coverage under this coverage section is excess of the amount of such partner's percentage ownership of such **Organization**, on the day immediately preceding the date of **Discovery**, multiplied by such **Organization's** total assets as reflected in such **Organization's** most recent audited financial statements;

(d)     loss or damage due to declared or undeclared war, civil war, insurrection, rebellion, revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization, or any act or condition incident to any of the foregoing;

(e)     loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination, or any act or condition incident to any of the foregoing;

(f)     loss of income not realized as the result of a covered loss;

FIC001347

(g)    indirect or consequential loss or damage of any kind; provided that this Exclusion 12(g) shall not apply to otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause 10;

(h)    fees, costs or expenses incurred or paid:

    (i)    as a result of the reconstitution of **Data** if an **Organization** knowingly used illegal copies of programs;

    (ii)    to render the **Data** usable by replacement processing equipment;

    (iii)    to design, update or improve software or programs or to perfect their operation or performance; or

    (iv)    as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the computer or its facilities;

(i)    fees, costs or expenses incurred or paid in defending or prosecuting any legal proceeding or claim; provided that this Exclusion 12(i) shall not apply to the coverage provided under Subsection 22 Legal Expenses Extension;

(j)    loss or damage due to fire; provided that this Exclusion 12(j) shall not apply to:

    (i)    loss of **Money** or **Securities**; or

    (ii)    damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

(k)    loss due to an **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**; provided that this Exclusion 12(k) shall not apply to otherwise covered loss under Insuring Clause 7 or otherwise covered loss of **Property** under Insuring Clause 5;

(l)    loss sustained by one **Insured** to the advantage of any other **Insured**;

(m)    loss of or damage to **Money, Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by an **Organization** to have custody of such **Money, Securities** or **Property**; provided that this Exclusion 12(m) shall not apply to the extent that coverage under this coverage section is excess of the amount recovered or received by such **Organization** under:

    (i)    such **Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

    (ii)    any other insurance or indemnity in force which would cover the loss in whole or in part; or

FIC001348

**Executive Protection Portfolio** SM
*Crime Coverage Section*

    (n)    loss or damage due to **Theft, Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud, Credit Card Fraud** or other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**) committed by any authorized representative of an **Insured**, whether acting alone or in collusion with others; provided that this Exclusion 12(n) shall not apply to otherwise covered loss under Insuring Clause 1 or 9 resulting from **Theft** or **Forgery** committed by an **Employee** acting in collusion with such authorized representative.

13.    No coverage will be available under Insuring Clause 1 or 9 for:

    (a)    loss caused by any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor or other similar representative; or

    (b)    loss caused by an **Employee** which is sustained by an **Insured**:

        (i)    after an **Executive** or **Insurance Representative** becomes aware of a **Theft, Forgery** or other fraudulent, dishonest or criminal act committed by such **Employee** while employed with or in the service of an **Insured**;

        (ii)    after an **Executive** or **Insurance Representative** becomes aware of a **Theft, Forgery** or other fraudulent, dishonest or criminal act, involving **Money, Securities** or other property valued at twenty-five thousand dollars ($25,000) or more, committed by such **Employee** prior to employment or service with an **Insured**; or

        (iii)    more than sixty (60) days following the termination of such **Employee**.

14.    No coverage will be available under Insuring Clause 2 or 3 for:

    (a)    loss or damage due to **Forgery, Computer Fraud, Funds Transfer Fraud, Money Orders And Counterfeit Currency Fraud** or **Credit Card Fraud**; or

    (b)    loss of or damage to **Money, Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

15.    No coverage will be available under Insuring Clause 2, 3, 5, or 6 for loss or damage as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to any property.

16.    No coverage will be available under Insuring Clause 4 for loss due to **Forgery** or alteration of any registered or coupon obligation issued or purported to have been issued by an **Insured**, or any coupon whether attached or detached.

17    No coverage will be available under Insuring Clause 5 for loss caused by a **Third Party** which is sustained by an **Organization** sixty (60) days or more after an **Organization** becomes aware of a **Computer Fraud** or other fraudulent, dishonest or criminal act committed by such **Third Party**.

18.    No coverage will be available under Insuring Clause 8 for loss caused by any forgery or alteration of, on or in any written instrument; provided that this Exclusion 18 shall not apply if:

    (a)    the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

    (b)    an **Organization** is legally liable to the issuer of such credit card for such loss.

19.    No coverage will be available under this coverage section for:

    (a)    loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

    (b)    loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

    (c)    loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause.

## Ownership

20.    Solely for the purposes of Insuring Clauses 1 through 8, the Company's liability under this coverage section will apply only to **Money, Securities** or **Property** owned by the **Organization** or for which the **Organization** is legally liable, or held by the **Organization** in any capacity whether or not the **Organization** is liable; provided that:

    (a)    the Company's liability will not apply to damage to the **Premises** unless the **Organization** is the owner of such **Premises** or is legally liable for such damage; or

    (b)    with respect to Insuring Clause 1, the Company's liability will not apply to **Money, Securities** or **Property** of a **Client**.

Solely for the purposes of Insuring Clause 9, the Company's liability under this coverage section will apply only to **Money, Securities** or **Property** owned by a **Client**, which is held by the **Organization** in any capacity or for which the **Organization** is legally liable.

## ERISA Plan

21.    Solely with respect to loss sustained by an **ERISA Plan**, payment by the Company for covered loss to the **Parent Organization** shall be held by such **Parent Organization** for the use and benefit of the **ERISA Plan** sustaining such loss.

Solely with respect to loss sustained by an **ERISA Plan**:

    (a)    Insuring Clause 1 is amended to read in its entirety as follows:

FIC001350

*Executive Protection Portfolio*<sup>SM</sup>

*Crime Coverage Section*

The Company shall pay the **Parent Organization** for direct loss of **Money**, **Securities** or **Property** sustained by an **ERISA Plan** resulting from a fraudulent or dishonest act committed by an **Employee** acting alone or in collusion with others.

(b)   The words "sixty (60) days" are deleted from Exclusion 19 of this coverage section, wherever they appear in such Exclusion, and the words "one (1) year" are substituted in place thereof.

No Retention shall apply to loss sustained by an **ERISA Plan** covered under this coverage section.

### Legal Expenses Extension

22.   In addition to the Limits of Liability set forth in the Declarations for this coverage section, the Company shall pay the **Parent Organization** for:

(a)   As a result of loss covered under Insuring Clause 4, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** or an **Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**;

(b)   As a result of loss covered under Insuring Clause 8, reasonable court costs and attorneys' fees incurred and paid, with the Company's prior written consent, in defending an **Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

### Changes in Exposure

23.   If before or during the **Policy Period** any **Organization**:

(a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)   acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

then coverage shall be provided for such acquired organization or new **Subsidiary** after the effective date of such acquisition or creation.

If the total revenues of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company. If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired organization or new **Subsidiary** shall be null and void from the date of such acquisition or creation. Coverage for such acquired organization or new **Subsidiary** shall

be subject to such additional or different limitations, conditions, provisions or other terms as the Company in its sole discretion may require.

### *Liability For Prior Losses*

24.   In the event of loss sustained prior to the inception date of this coverage section, prior to the effective date of coverage for any additional insureds or prior to the effective date of any coverage added by endorsement, which would otherwise be covered under this coverage section, such prior loss shall be afforded coverage subject to the following:

(a)   an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy, which at the time such prior loss was sustained, afforded some or all of the coverage of an Insuring Clause under this coverage section applicable to such prior loss;

(b)   such coverage continued without interruption from the time such prior loss was sustained until the inception date or effective date(s) as described above;

(c)   such prior loss was first **Discovered** by an **Insured** after the time allowed for discovery under the last such policy; and

(d)   some or all of the coverage of an Insuring Clause under this coverage section would be applicable to such prior loss.

If such prior bond or policy carried by the **Insured** or predecessor in interest of such **Insured** was issued by the Company or its affiliates, such prior bond or policy shall terminate as of the inception of this coverage section and such prior bond or policy shall not cover any loss not discovered and noticed to the Company prior to the inception of this coverage section.

The **Insured** shall neither be entitled to a separate recovery of the limits of each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies.  The Company's maximum liability for such prior loss shall not exceed the lesser of the limit of liability of the policy in force at the time such prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations for this coverage section.

### *Limits of Liability and Retention*

25.   Subject to Subsection 24 Liability for Prior Losses, the Company shall only be liable for loss sustained by an **Insured** during the **Policy Period**.

The Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations for this coverage section, regardless of the number of **Insureds** sustaining such loss.

The Company's maximum liability shall not exceed the Limit of Liability:

**Executive Protection Portfolio** *SM*
*Crime Coverage Section*

(a) Applicable to Insuring Clause 1 as set forth in Item 2(A) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(b) Applicable to Insuring Clause 2 as set forth in Item 2(B) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(c) Applicable to Insuring Clause 3 as set forth in Item 2(C) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(d) Applicable to Insuring Clause 4 as set forth in Item 2(D) of the Declarations for this coverage section: for all loss resulting from any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**;

(e) Applicable to Insuring Clause 5 as set forth in Item 2(E) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(f) Applicable to Insuring Clause 6 as set forth in Item 2(F) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(g) Applicable to Insuring Clause 7 as set forth in Item 2(G) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

(h) Applicable to Insuring Clause 8 as set forth in Item 2(H) of the Declarations for this coverage section: for all loss resulting from any act, casualty or event, any series of related acts, casualties or events, or any act or series of acts committed by the same **Third Party** or in which the same **Third Party** is concerned or implicated, regardless of whether such act, casualty or event or series of acts, casualties or events was committed or occurred before or during the **Policy Period**;

FIC001353

*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

(i) Applicable to Insuring Clause 9 as set forth in Item 2(I) of the Declarations for this coverage section: for all loss resulting from any act or any series of acts committed by the same **Employee** or in which the same **Employee** is concerned or implicated, regardless of whether such act or series of acts was committed before or during the **Policy Period**; or

(j) Applicable to Insuring Clause 10 as set forth in Item 2(J) of the Declarations for this coverage section: for all **Investigative Expenses** or **Computer Violation Expenses** resulting from any applicable covered loss.

If a loss is covered under more than one Insuring Clause, the maximum amount payable under this coverage section shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

The Company's liability under this coverage section shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 3 of the Declarations for this coverage section.

### Non-Accumulation of Liability

26.   When there is more than one **Insured**, the maximum liability of the Company for loss sustained by any or all **Insureds** shall not exceed the amount for which the Company would be liable if all loss was sustained by any one **Insured**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this coverage section, any prior bond or policy, or any renewal or replacement of this coverage section, the liability of the Company with respect to any loss shall not be cumulative from year to year or from policy period to policy period.

### Proof of Loss and Legal Proceedings

27.   Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or discovery by all **Insureds**.

It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Organization** will:

(a) give written notice to the Company (or to a licensed agent of the Company in the state of New York) at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery**, with sufficient information to identify the **Parent Organization** ;

(b) furnish affirmative proof of loss with full particulars to the Company at the earliest practicable moment, and in no event later than six (6) months after such **Discovery**;

(c) submit to examination under oath at the Company's request;

(d) produce all pertinent records at such reasonable times and places as the Company shall designate; and

(e) provide full cooperation with the Company in all matters pertaining to a loss or claim.

FIC001354

**Executive Protection Portfolio** <sup>SM</sup>
*Crime Coverage Section*

The **Parent Organization** may not offer, as a part of any proof of loss, any computation or comparison which involves in any manner a profit and loss computation or comparison. The **Parent Organization** may offer a comparison between an **Organization's** or **Client's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Organization** or **Client** establishes wholly apart from such comparison that it has sustained a covered loss caused by an identified **Employee**.

No **Insured** shall institute legal proceedings against the Company:

(a)   after two (2) years immediately following any **Discovery**; or

(b)   to recover a judgment or settlement against it or its bank resulting from **Forgery, Credit Card Fraud** or related legal expenses as set forth in Subsection 22 Legal Expenses Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

---

### Valuation and Foreign Currency

28.   The Company shall pay:

    (a)   the least of:

        (i)   the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**;

        (ii)   the cost of replacing **Securities**; or

        (iii)   the cost to post a Lost Instrument Bond;

    (b)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

    (c)   the least of:

        (i)   the actual cash value of **Property**; or

        (ii)   the cost to repair or replace **Property**, other than precious metals, with that of similar quality and value,

    at the time the **Parent Organization** complies with Subsection 27 Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss;

    (d)   the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**; or

    (e)   the United States of America dollar value of any precious metal based on the amount published in *The Wall Street Journal* Cash Prices, Precious Metals, on the day loss involving such precious metal is **Discovered**.

*Executive Protection Portfolio* <sup>SM</sup>
*Crime Coverage Section*

*Recoveries*

29.  Recoveries for any loss covered under this coverage section, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(a)  first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(b)  second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(c)  third, to an **Insured** for the Retention applicable to such loss;

(d)  fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.

*Other Insurance*

30.  If any **Insured** or any other party in interest in any loss covered by this coverage section has any valid and collectible bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this coverage section, then this coverage section shall be null and void to the extent of the amount recoverable or received under such bond, indemnity, or insurance; provided that this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, to the extent of the amount of such loss in excess of the amount recoverable or received under such bond, indemnity or insurance.

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8212-1392

Issued to: MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF EXECUTIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of the term **Executive** as defined in Subsection 11 Definitions of this coverage section is amended to read in its entirety as follows:

(a)     duly elected or appointed director, officer, trustee, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-10894 (5/2005)              Page 1

FIC001357

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 2

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

PRIVACY AND DATA BREACH EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection 12, Exclusions of this coverage section, is amended as follows:

1.       Exclusion 12.(b) is deleted.

2.       No coverage will be available for:

   (i)      loss involving the disclosure of an **Insured's** or another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information;

   (ii)     loss involving the use of another entity or person's confidential or personal information while in the care, custody or control of an **Insured** including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information; or

   (iii)    fees, costs, fines, penalties or any other expenses incurred by an **Insured** which result, directly or indirectly, from the access to or disclosure of another entity or person's confidential or personal information, including but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any similar type of nonpublic information,

provided, however, that the above exclusions shall not apply to loss that is otherwise covered under Insuring Clause 6, Funds Transfer Fraud Coverage.

14-02-19672 (03/2013)                    Page 1

FIC001358

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.


_____
Authorized Representative

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company: Federal Insurance Company

Endorsement No. 3

To be attached to and
form a part of Policy No. 8212-1392

Issued to: MEDIDATA SOLUTIONS INC.

---

CONVERSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)　　Subsection 19, Exclusions, of this coverage section is amended to read in its entirety as follows:

19.　　No coverage will be available under this coverage section for:

(a)　loss unless sustained by an **Insured** and **Discovered** prior to the termination of this coverage section as to such **Insured**;

(b)　loss unless sustained and **Discovered** prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause; or

(c)　loss unless sustained and **Discovered** prior to the termination of this coverage section in its entirety;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause.

(2)　　The first paragraph of Subsection 23, Changes in Exposure, of this coverage section is amended to read in its entirety as follows:

If before or during the **Policy Period** any **Organization**:

(a)　acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)　acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

14-02-8592 (07/2005) rev.　　　　　　Page 1

then coverage shall be provided for such acquired organization or new **Subsidiary** for loss **Discovered** after the effective date of such acquisition or creation.

(3)     Subsection 24, Liability for Prior Losses, of this coverage section is deleted in its entirety.  Accordingly, any and all references to Subsection 24 are deleted in their entirety

(4)     The first paragraph of Subsection 25, Limits of Liability and Retention, of this coverage section is amended to read in its entirety as follows:

The Company shall only be liable for loss sustained by an **Insured** prior to termination of this coverage section and **Discovered** during the **Policy Period**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:   Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

DELETE EXCLUSION 17 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 17 of this coverage section is deleted.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8754 (8/2003)                    Page 1

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:  Federal Insurance Company

Endorsement No. 5

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

AMEND EXCLUSION 19 ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion 19 of this coverage section is amended to read in its entirety as follows:

19.   No coverage will be available under this coverage section for:

(a)   loss unless sustained by an **Insured** prior to the termination of this coverage section as to such **Insured**, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

(b)   loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination; or

(c)   loss unless sustained prior to the termination of this coverage section in its entirety, and **Discovered** and written notice thereof is given to the Company within sixty (60) days following such termination;

provided that in no event will coverage be available under this coverage section for such loss if such loss is covered under any renewal or replacement of this coverage section or any Insuring Clause or any particular coverage offered under any Insuring Clause issued by the Company or by any affiliate of the Company.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

14-02-8907 (10/2004) REV.              Page 1

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

FIC001364