**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:  Federal Insurance Company

Endorsement No. 6

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

AMEND SUBSECTION 23 CHANGES IN EXPOSURE ENDORSEMENT

In consideration of the premium charged, it is agreed that the first sentence of the final paragraph of Subsection 23 Changes in Exposure of this coverage section is amended to read in its entirety as follows:

> If the total revenues of any such acquired organization or new **Subsidiary** exceed 10 percent (10%) of the total revenues of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than ninety (90) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company.

The remaining sentences of the final paragraph of Subsection 23 shall remain unchanged.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-8923A (4/2007) rev.                    Page 1

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:   Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND VALUATION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a) of Subsection 28 Valuation and Foreign Currency of this coverage section is amended to read in its entirety as follows:

(a)     the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**, or the cost of replacing such **Securities**, whichever is less, plus the cost to post a Lost Instrument Bond;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

FIC001366

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:   Federal Insurance Company

Endorsement No. 8

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   Exclusion 12(j) of this coverage section is deleted.

(2)   No coverage will be available under Insuring Clause 2 or 3 for loss or damage due to fire;
        provided that this Exclusion shall not apply to:

   (i)   loss of **Money** or **Securities**; or

   (ii)   damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8926 (11/2003)                    Page 1

FIC001367

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014            Company:   Federal Insurance Company

Endorsement No. 9

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      Exclusion 12(a) of this coverage section is deleted.

(2)      No coverage will be available under Insuring Clause 1 or 9 of this coverage section for loss resulting directly or
         indirectly from any authorized or unauthorized trading of **Money, Securities** or **Property**, whether or not in the
         name of an **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion shall not
         apply to otherwise covered loss under Insuring Clause 1 or 9 which results in improper financial gain to an
         **Employee** (such loss shall mean only the amount of improper financial gain to such **Employee**, and shall not
         include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises
         associated with employment, paid by the **Insured** to such **Employee**).

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8927 (11/2003)              Page 1

FIC001368

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014          Company:   Federal Insurance Company

                                         Endorsement No. 10

                                         To be attached to and
                                         form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)   Exclusion 12(k) of this coverage section is deleted.

(2)   No coverage will be available under Insuring Clause 2, 3, 4, 5, 6, or 8 for loss due to an **Insured** knowingly having
       given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**; provided
       that this Exclusion shall not apply to otherwise covered loss of **Property** under Insuring Clause 5.


The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8928 (11/2003)          Page 1

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:  Federal Insurance Company

Endorsement No. 11

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Employee**, as defined in Subsection 11.,
Definitions, of this coverage section is amended to delete paragraph (a) and replace it with the following:

(a) (i)   natural person while in the regular service of an **Organization** in the ordinary course of such
**Organization's** business, whom such **Organization** compensates by **Salary** and has the right to
govern and direct in the performance of such service, including any part-time or seasonal employee;

(ii)   natural person while in the regular service of an **Organization** in the ordinary course of such
**Organization's** business, whom such **Organization** has the right to govern and direct in the
performance of such service and is assigned to perform such service by any agency furnishing
leased personnel or temporary personnel on a contingent or part-time basis; provided any coverage
available under this coverage section for loss caused by such a natural person shall be excess of the
amount recoverable or received under any bond, indemnity or insurance held by the agency
furnishing such personnel;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8931A (04/2008) rev.          Page 1

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:   Federal Insurance Company

Endorsement No. 12

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF SECURITIES ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Securities**, as defined in Subsection 11 Definitions of this coverage section is amended to include revenue and other stamps in current use, tokens and tickets.   **Securities** does not include **Money**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8932 (11/2003)                    Page 1

FIC001371

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:   Federal Insurance Company

Endorsement No. 13

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND MONEY ORDERS AND COUNTERFEIT CURRENCY FRAUD ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Money Orders And Counterfeit Currency Fraud**, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

> **Money Orders And Counterfeit Currency Fraud** means the good faith acceptance by an **Organization**:
>
> (a)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or
>
> (b)     in the regular course of business, of counterfeit paper currency.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-8933 (11/2003)                    Page 1

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014              Company:  Federal Insurance Company

                                             Endorsement No. 14

                                             To be attached to and
                                             form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

AMEND EXCLUSION 12(h)(ii) ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (h)(ii) of Exclusion 12 of this coverage section is amended to read in its entirety as follows:

    (ii)      to render **Data** usable by replacement processing equipment;


The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-9146 (2/2004)              Page 1

FIC001373

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014                    Company:   Federal Insurance Company

Endorsement No. 15

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF COMPUTER SYSTEM ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Computer System**, as defined in Subsection 11 Definitions of this coverage section, is amended to read in its entirety as follows:

> **Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are:

> (a)      owned and operated by an **Organization**;

> (b)      leased and operated by an **Organization**; or

> (c)      utilized by an **Organization**.


The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


Authorized Representative

14-02-9261 (4/2004)                    Page 1

FIC001374

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Crime Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:  Federal Insurance Company

Endorsement No. 16

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

AMEND SUBSECTION 20 OWNERSHIP ENDORSEMENT

In consideration of the premium charged, it is agreed that the second paragraph of Subsection 20 Ownership is amended to read in its entirety as follows:

Solely for the purposes of Insuring Clause 9, the Company's liability under this coverage section will apply only to **Money**, **Securities** or **Property**:

(a)     owned by a **Client**, which is held by the **Organization** in any capacity or for which the **Organization** is legally liable; or

(b)     held by the **Client**, for which the **Client** is legally liable.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-9262 (4/2004)                    Page 1

FIC001375

Chubb Group of Insurance
Companies
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio*
SM *Kidnap/Ransom and Extortion Coverage
Section*

DECLARATIONS

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana.

**READ THE ENTIRE POLICY CAREFULLY.**

Item 1. **Parent Organization:**

MEDIDATA SOLUTIONS INC.
350 HUDSON STREET, 9th Floor
NEW YORK, NY 10014

Item 2.  Insuring Clauses:

Limits of Liability:

| | | |
|---|---|---|
| (A) | Insuring Clause 1 – Kidnapping and Extortion Coverage: | $3,000,000.00 |
| (B) | Insuring Clause 2 - Custody Coverage: | $3,000,000.00 |
| (C) | Insuring Clause 3 - Expense Coverage: | $3,000,000.00 |
| | (i)   Sublimit for **Recall Expenses:** | $3,000,000.00 |
| | (ii)  Sublimit for Rest and Rehabilitation Expenses: | $50,000.00 |

Note: The Sublimits shown in (C)(I) and (C)(ii)
are part of, and not in addition to, the
Limit of Liability in (C).

| | | |
|---|---|---|
| (D) | Insuring Clause 4 - Accidental Loss Coverage: | |
| | (i)   **Loss of Life Benefit Amount:** | $1,000,000.00 |
| | (ii)  **Event Benefit Amount:** | $3,000,000.00 |
| | (iii) **Mutilation** (Percentage of **Loss of Life Benefit** | 25% |
| | (iv) **Accidental Loss** other than **Mutilation** or **Loss of Life** (Percentage of **Loss of Life Benefit Amount**): | 50% |
| (E) | Insuring Clause 5 - Legal Liability Costs Coverage: | $3,000,000.00 |

Item 3.    Organization
Medidata Solutions, Inc., and its subsidiaries

14-02-7308NY (Ed. 1/2004)              Page 1 of 17

FIC001376

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey  07059

*Executive Protection Portfolio*
SM *Kidnap/Ransom and Extortion Coverage Section*

Item 4.   Retention:                                                None

*Executive Protection Portfolio* <sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

**In consideration of payment of the premium and subject to the Declarations, the General Terms and Conditions, and the limitations, conditions, provisions and other terms of this coverage section, the Company and the Insureds agree as follows:**

*Insuring Clauses*

*Kidnapping and Extortion Coverage Insuring Clause 1*

1.  The Company shall reimburse the **Parent Organization** for direct loss of property or other consideration surrendered as payment by or on behalf of an **Organization** resulting from **Kidnapping**, **Extortion Threat** or **Cyber Extortion**.

*Custody Coverage Insuring Clause 2*

2.  The Company shall reimburse the **Parent Organization** for direct loss caused by the actual destruction, disappearance, confiscation or unlawful taking of property or other consideration, which is intended as payment for a covered **Kidnapping**, **Extortion Threat** or **Cyber Extortion**, while being held or conveyed by a person authorized by an **Organization**.

*Expense Coverage Insuring Clause 3*

3.  The Company shall reimburse the **Parent Organization** for **Expenses** paid by an **Organization** resulting directly from a covered **Kidnapping**, **Extortion Threat** or **Cyber Extortion**, or resulting directly from a **Hijacking**, **Political Threat** or **Wrongful Detention**.

*Accidental Loss Coverage Insuring Clause 4*

4.  The Company shall pay the Benefit Amount for **Accidental Loss** resulting directly from a covered **Kidnapping** or resulting directly from a **Hijacking** or **Wrongful Detention**.

*Legal Liability Costs Coverage Insuring Clause 5*

5.  The Company shall reimburse the **Parent Organization** for **Legal Liability Costs**. Defense costs that are part of **Legal Liability Costs** shall be in addition to, and not part of, the Limit of Liability set forth in Item 2(E) of the Declarations for this coverage section; provided that, when such Limit of Liability is exhausted by payment of **Legal Liability Costs**, other than defense costs, the Company's obligation to pay defense costs under this Insuring Clause shall cease.

*Definitions*

6.  For the purposes of this coverage section:

    **Accidental Loss** means **Loss of Life**, **Loss of Use**, **Loss of Sight**, **Loss of Speech and/or Hearing** or **Mutilation** of an **Insured Person** when such **Accidental Loss**:

14-02-7308NY (Ed. 1/2004)          Page 3 of 17

*Executive Protection Portfolio* <sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

(a)   is sudden, unforeseen, unexpected and independent of any illness, disease or other bodily malfunction of such **Insured Person**; and

(b)   happens by chance and arises from a source external to such **Insured Person**.

**Computer System** means a computer and all input, output, processing, storage, off-line media library and communication facilities which are connected to such computer, provided that such computer and facilities are owned and operated or leased and operated by an **Organization**.

**Consequential Personal Financial Loss** means pecuniary loss incurred by an **Insured Person**, including pecuniary loss resulting directly from the failure to renew insurance contracts, the failure to exercise stock options or the failure to respond to margin or loan calls by financial institutions.

**Contaminate** means to introduce a foreign material or substance, which would render any tangible property unfit for use or sale.

**Cyber-attack** means a set of unauthorized **Instructions** that are designed to alter, damage or destroy information within a **Computer System** without the authorization of an **Organization**, including those **Instructions** that are self-replicating or self-propagating and are designed to contaminate computer programs or computer data, consume computer resources or in some fashion usurp the normal operation of a **Computer System**.

**Cyber Extortion** means a threat or threats made directly against an **Organization** to:

(a)   alter, damage, destroy or render unusable any **Data** owned by such **Organization** or for which such **Organization** is legally liable; or

(b)   disseminate, divulge or utilize a **Record**,

by the fraudulent input of **Data** by means of a **Cyber-attack** into a **Computer System** by a person or group, whether acting alone or in collusion with others, where such person or group has fraudulently accessed or alleges to have fraudulently accessed such **Computer System** and is demanding payment or a series of payments, in exchange for the mitigation or removal of such threats.  However, such threat shall not constitute a **Cyber Extortion** unless, prior to surrendering property or other consideration as payment by or on behalf of an **Organization**, such **Organization** conducts a reasonable investigation and reasonably determines that such threat is technologically credible.

All such threats:

(i)    related by a common committed, attempted or threatened act; or

(ii)   made contemporaneously against the same **Organization** or involving the same **Data**, **Record** or **Cyber-attack**,

will be deemed to constitute a single **Cyber Extortion**.

**Data** means a representation of information, knowledge, facts, concepts or instructions which are processed and stored in a **Computer System**.

**Employee** means any:

(a)   natural person while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** compensates by **Salary** and has the right to govern and direct in the performance of such service, including any part-time, seasonal, leased or temporary employee;

(b)   natural person volunteer while in the regular service of an **Organization** in the ordinary course of such **Organization's** business, whom such **Organization** has the right to govern and direct in the performance of such service; or

(c)   **Executive** while performing acts within the scope of the usual duties of an **Employee**.

**Employee** shall not mean any agent, broker, factor, commission merchant, consignee, contractor, independent contractor, subcontractor or other similar representative.

**Event Benefit Amount** means that amount set forth in Item 2(D)(ii) of the Declarations for this coverage section.

**Executive** means any natural person specified below:

(a)   duly elected or appointed director, officer, member of the Board of Managers or management committee member of an **Organization** chartered in the United States of America;

(b)   in–house general counsel of an **Organization** chartered in the United States of America;

(c)   equivalent positions of (a) or (b) above in an **Organization** chartered in any other jurisdiction anywhere in the world; or

(d)   a partner of an **Organization** while engaged in the regular service of such **Organization**.

**Expenses** means:

(a)   solely in connection with a **Kidnapping**, **Extortion Threat**, **Political Threat**, **Hijacking** or **Wrongful Detention**, only the reasonable fees and expenses for or cost of:

(i)   an independent negotiator or consultant;

(ii)   an independent public relations consultant;

(iii)   travel and accommodations of an **Insured Person**;

(iv)   independent legal advice (other than **Legal Liability Costs**);

(v)   independent security guard services for up to fifteen (15) days; provided that, with respect to such services incurred in connection with any **Political Threat**, the **Organization** shall bear uninsured and at its own risk twenty-five percent (25%) of such services, and the Company's liability shall apply only to the remaining seventy-five percent (75%) of such services;

FIC001380

**Executive Protection Portfolio** <sup>SM</sup>
*Kidnap/Ransom and Extortion Coverage*
*Section*

(vi)     advertising, communications and recording equipment;

(vii)    an independent forensic analyst;

(viii)   assessment of such **Extortion Threat** or **Political Threat** by an independent security consultant;

(ix)     interest for a loan taken by an **Organization** for property or other consideration surrendered as payment under Insuring Clause 1;

(x)      a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Kidnapping, Extortion Threat, Wrongful Detention** or **Hijacking**;

(xi)     the **Salary** which an **Organization** continues to pay an **Employee** following such **Kidnapping, Wrongful Detention** or **Hijacking** of such **Employee**. Such coverage shall apply to the **Salary** of such **Employee** in effect at the time of such **Kidnapping, Wrongful Detention** or **Hijacking** and will end thirty (30) days after such **Employee** is released or suffers **Loss of Life**, or sixty (60) months after such **Kidnapping, Wrongful Detention** or **Hijacking** began, whichever is more recent;

(xii)    the salary or wages which an **Organization** pays a newly hired natural person to conduct the duties of an **Employee** following such **Kidnapping, Wrongful Detention**, or **Hijacking** of such **Employee**. Such coverage shall apply up to the **Salary** of such **Employee** in effect at the time of such **Kidnapping, Wrongful Detention**, or **Hijacking** and will end thirty (30) days after such **Employee** is released or suffers **Loss of Life**, or sixty (60) months after such **Kidnapping, Wrongful Detention** or **Hijacking** began, whichever is more recent;

(xiii)   **Consequential Personal Financial Loss** which an **Insured Person** suffers as the result of such **Insured Person's** inability to attend to personal financial matters;

(xiv)    reasonable medical, cosmetic, psychiatric and dental expenses incurred following an **Insured Person's** release;

(xv)     reasonable expenses of rest and rehabilitation, including meals and recreation, for up to thirty (30) days, when such expenses are incurred within twelve (12) months following an **Insured Person's** release;

(b)    solely in connection with an **Extortion Threat** to **Contaminate Merchandise, Recall Expenses**;

(c)    solely in connection with a **Cyber Extortion**, only the reasonable fees and expenses for or cost of:

(i)      an independent negotiator;

(ii)     assessment of such **Cyber Extortion** by an independent network security consultant;

FIC001381

**Executive Protection Portfolio** SM
Kidnap/Ransom and Extortion Coverage
Section

(iii)   an independent public relations consultant;

(iv)   travel and accommodations of an **Insured Person**;

(v)   independent legal advice (other than defense costs);

(vi)   interest for a loan taken by an **Organization** for property or other consideration surrendered as payment under Insuring Clause 1;

(vii)   a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Cyber Extortion**;

(d)   other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

**Extortion Threat** means a threat or threats made solely and directly against an **Organization** to:

(a)   commit a **Kidnapping** of, do bodily harm to, or wrongfully abduct or detain any **Insured Person**;

(b)   damage, destroy or **Contaminate** any **Property**;

(c)   disseminate, divulge or utilize any **Proprietary Information**; or

(d)   disseminate or make public negative information regarding **Merchandise** that has been the subject of a prior threat under (b) above,

by a person or group, whether acting alone or in collusion with others, demanding payment or a series of payments, in exchange for the mitigation or removal of such threats.

All such threats:

(i)   related by a common committed, attempted or threatened act; or

(ii)   made contemporaneously against the same **Organization** or involving the same **Insured Person**, **Property**, **Proprietary Information** or **Merchandise**,

will be deemed to constitute a single **Extortion Threat**.

**Hijacking** means the unlawful detention of an **Insured Person** (other than a **Kidnapping**) by violence or threat of violence by a person or group, where such unlawful detention:

(a)   occurs while traveling on or in an aircraft, watercraft or motor vehicle for a period in excess of four (4) hours; or

(b)   occurs while traveling on or in an aircraft or watercraft and results in such **Insured Person's Loss of Life**.

**Instructions** means an ordered set of **Data** representing coded information that, when executed by a **Computer System**, causes such **Computer System** to process **Data** or perform one or more operations.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means:

(a)   any **Employee**;

(b)   any **Relative** of an **Employee**;

(c)   any natural person who is employed in the household of an **Employee** while in the home of such **Employee**;

(d)   any natural person who is a legal resident in the home of an **Employee** or a guest while in the home of an **Employee**;

(e)   any customer or guest of an **Organization** while on the **Premises** of such **Organization**;

(f)   any customer or guest of an **Organization** while traveling on or in an aircraft, watercraft or motor vehicle with an **Employee**; or

(g)   any natural person who is temporarily retained by an **Organization** to deliver a ransom or extortion payment.

**Kidnapping** means an actual or alleged wrongful abduction and holding under duress or by fraudulent means of an **Insured Person** by a person or a group, whether acting alone or in collusion with others, demanding payment or a series of payments by an **Organization**, in exchange for the release of such **Insured Person**.

**Legal Liability Costs** means the reasonable defense costs incurred by an **Organization** and damages which an **Organization** becomes legally obligated to pay as a result of a judgment or settlement in any suit brought by an **Insured Person** (or the estate, heirs or legal representatives of such **Insured Person**) against such **Organization** alleging negligence or incompetence:

(a)   in the hostage retrieval operations or negotiations in a covered **Kidnapping** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**) or in a **Hijacking** or **Wrongful Detention** of such **Insured Person**; or

(b)   in the prevention of a covered **Kidnapping** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**) or in a **Hijacking** or **Wrongful Detention** of such **Insured Person**;

provided that such **Organization** agrees as a condition precedent to coverage under Insuring Clause 5 to cooperate with the Company in conducting the defense or in negotiating the settlement of such suit.

**Loss of Life** means:

(a)   death, including clinical death, determined by a medical examiner or similar local governing medical authority; or

(b)   the absence of communication from an **Insured Person** or those responsible for the **Kidnapping**, **Hijacking** or **Wrongful Detention** of such **Insured Person** for a period of two (2) years following the later of:

(i)   such **Kidnapping**, **Hijacking** or **Wrongful Detention**;

(ii)   the last communication from such **Insured Person**; or

(iii)   the last communication from those responsible for such **Kidnapping**, **Hijacking** or **Wrongful Detention**.

**Loss of Life Benefit Amount** means that amount set forth in Item 2(D)(i) of the Declarations for this coverage section.

**Loss of Sight** means the permanent loss of sight to the extent of legal blindness.

**Loss of Speech and/or Hearing** means the permanent total loss of the capability of speech and/or hearing.

**Loss of Use** means the permanent total loss of function of a foot, hand, or thumb and index finger.

**Merchandise** means an **Organization's** inventory, raw materials, work in progress or products manufactured or distributed by an **Organization**.

**Mutilation** means the permanent total loss of an entire finger, toe, ear, nose or genital organ.

**Organization** means any organization designated in Item 3 of the Declarations for this coverage section.

**Political Threat** means a politically motivated threat or threats made solely and directly against an **Organization** to do bodily harm to an **Employee** or a **Relative** of an **Employee** by a person or group:

(a)   acting as an agent of or with tacit approval of any government or governmental entity; or

(b)   acting or purporting to act on behalf of any political terrorist or insurgent party, organization or group.

All such threats:

(i)   related by a common committed, attempted or threatened act; or

(ii)   made contemporaneously against the same **Employee** or **Relative** of an **Employee**,

will be deemed to constitute a single **Political Threat**.

**Premises** means buildings or facilities occupied by an **Organization** in conducting its business.

**Property** means:

(a)   all **Premises** and **Merchandise** of an **Organization**;

(b)   any other real or tangible personal property owned or leased by an **Organization**; and

FIC001384

(c)   any other tangible personal property for which an **Organization** is legally liable, provided that such tangible personal property is located on the **Premises** or on any land adjacent thereto occupied by such **Organization** in conducting its business.

**Proprietary Information** means any confidential, private or secret information of an **Organization** and unique to such **Organization's** business, contained in or on drawings, negatives, microfilm, tapes, transparencies, manuscripts, prints, computer discs or other records of a similar nature, provided that such information is protected by physical or electronic control or other reasonable efforts to maintain nondisclosure of such information.

**Recall Expenses** means:

(a)   reasonable expenses for transportation; and

(b)   other reasonable expenses, subject to the Company's prior written approval;

incurred by an **Organization** in the withdrawal, physical inspection or destruction of **Merchandise**.

**Record** means information about a customer held by an **Organization** pertaining to that customer's relationship with such **Organization**, which is not publicly available and is stored in an electronic medium, provided that such information is protected by electronic control to maintain nondisclosure of such information.

**Relative** means spouses, siblings, ancestors, spouses' ancestors, lineal descendants or lineal descendants' spouses.  Lineal descendants include adopted children, foster children and stepchildren.  Ancestors include adoptive parents and stepparents.

**Salary** means compensation an **Organization** pays an **Employee**, including bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

**Subsidiary,** either in the singular or plural, means any organization while more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for election of or to appoint directors, members of the Board of Managers, or management committee members of such organization are owned or controlled, directly or indirectly, in any combination, by one or more **Organizations**.

**Wrongful Detention** means the wrongful involuntary confinement of an **Insured Person** (other than a **Kidnapping** or **Hijacking**) by a person or group, for a period of not less than twenty-four (24) hours.

*Exclusions*

7.   No coverage will be available under this coverage section for:

(a)   loss of property or other consideration due to any fraudulent, dishonest or criminal act of an identifiable **Employee**, whether acting alone or in collusion with others; provided that this Exclusion 7(a) shall not apply to the extent that coverage under this coverage section is excess of the amount available to an **Organization**, whether collectible or not, under any other bond, insurance or indemnity which would cover such loss in whole or in part;

(b)   loss resulting from fraud by an **Insured Person**, whether acting alone or in collusion with others, allegedly the subject of a **Kidnapping, Extortion Threat, Wrongful Detention, Political Threat** or **Hijacking** if an **Organization** had not, prior to any payment, made reasonable efforts to determine that such **Kidnapping, Extortion Threat, Wrongful Detention, Political Threat** or **Hijacking** was genuine;

(c)   loss of property or other consideration surrendered or intended to be surrendered as payment by or on behalf of an **Insured Person** unless an **Organization** agrees that such payment is on behalf of such **Organization**;

(d)   loss of income not realized as the result of a covered loss;

(e)   **Recall Expenses** for or due to:

    (i)   refunds for, the value of or the cost of replacing any withdrawn, damaged or destroyed **Merchandise**; or

    (ii)   any loss, fees or expenses incurred for any known or suspected defect, deficiency or use of substandard or flawed materials necessitating the withdrawal, physical inspection or destruction of **Merchandise** in the absence of an **Extortion Threat** against such **Merchandise**;

(f)   loss arising from **Wrongful Detention** or **Political Threat** due to:

    (i)   any violation of law of the host country by an **Insured**; or

    (ii)   failure of an **Insured** to procure or maintain proper immigration, work, residence or similar visas, permits or other documentation;

(g)   loss sustained by one **Insured** to the advantage of any other **Insured**;

(h)   loss unless the **Kidnapping, Extortion Threat, Cyber Extortion, Political Threat, Wrongful Detention** or **Hijacking** occurs prior to:

    (i)   termination of this coverage section as to any applicable **Insured** and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination;

    (ii)   termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination; or

    (iii)   termination of this coverage section in its entirety and is discovered and communicated in writing to the Company as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination.

(i)   loss resulting from fraud by an **Insured Person**, whether acting alone or in collusion with others, allegedly the subject of an **Accidental Loss**;

8.   No coverage will be available under Insuring Clause 2, 3, 4 or 5 for loss of property or other consideration actually surrendered as a ransom or extortion payment covered under Insuring Clause 1.

9.   No coverage will be available under Insuring Clause 1 for:

(a)   loss of property or other consideration surrendered away from the **Premises** in any face to face encounter involving the use or threat of force or violence unless surrendered by a person in possession of such property or other consideration at the time of such surrender for the sole purpose of conveying it to pay a previously communicated ransom or extortion demand and unless actually surrendered to those responsible for such demand or their designee; or

(b)   loss of property or other consideration surrendered on the **Premises** unless brought onto the **Premises** after receipt of the ransom or extortion demand for the sole purpose of paying such demand and unless actually surrendered to those responsible for such demand or their designee.

### Beneficiary

10.   The **Loss of Life Benefit Amount** will be paid to the **Insured Person's** designated beneficiary.  The Benefit Amount for all other **Accidental Loss** will be paid to the **Insured Person**, unless otherwise directed by the **Insured Person**.

If an **Insured Person** suffers **Loss of Life** and has not designated a beneficiary, or if the designated beneficiary is not alive, the Company will pay covered loss in the following order:

(a)   to the spouse;

(b)   in equal shares to the surviving children;

(c)   in equal shares to the surviving parents;

(d)   in equal shares to the surviving brothers and sisters; or

(e)   to the estate,

of such **Insured Person**.

### Changes in Exposure

11.   If before or during the **Policy Period** any **Organization**:

(a)   acquires securities or voting rights in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

(b)   acquires another organization by merger into or consolidation with such **Organization** such that such **Organization** is the surviving entity,

then coverage shall be provided for such acquired organization or new **Subsidiary** after the effective date of such acquisition or creation.

If the total revenues of any such acquired organization or new **Subsidiary** exceed ten percent (10%) of the total revenues of the **Parent Organization** (as reflected in the most

FIC001387

recent audited consolidated financial statements of such organization and the **Parent Organization**, respectively, as of the date of such acquisition or creation), the **Parent Organization** shall give written notice of such acquisition or creation to the Company as soon as practicable, but in no event later than sixty (60) days after the date of such acquisition or creation, together with such information as the Company in its sole discretion may require and shall pay any reasonable additional premium required by the Company.  If the **Parent Organization** fails to give such notice within the time specified in the preceding sentence, or fails to pay the additional premium required by the Company, coverage for such acquired organization or new **Subsidiary** shall be null and void from the date of such acquisition or creation.  Coverage for such acquired organization or new **Subsidiary** shall be subject to such additional or different limitations, conditions, provisions or other terms as the Company in its sole discretion may require.

---

*Limits of Liability and Retention*

12.   The Company shall only be liable for a **Kidnapping**, **Extortion Threat**, **Cyber Extortion**, **Hijacking**, **Political Threat** or **Wrongful Detention** that first occurs during the **Policy Period**.

Except to the extent otherwise provided under Insuring Clause 5, the Company's maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 in the Declarations for this coverage section, regardless of the number of **Insureds** sustaining such loss.

The Company's maximum liability shall not exceed the Limit of Liability:

(a)   Applicable to Insuring Clause 1 as set forth in Item 2(A) of the Declarations for this coverage section: for all loss of property and other consideration surrendered as ransom and extortion payments arising from one **Extortion Threat**, **Kidnapping** or **Cyber Extortion** and any related **Extortion Threat**, **Kidnapping** or **Cyber Extortion**, or a series of related **Extortion Threats**, **Kidnappings** or **Cyber Extortions**;

(b)   Applicable to Insuring Clause 2 as set forth in Item 2(B) of the Declarations for this coverage section: for all loss of property and other consideration intended as ransom and extortion payments arising from one **Extortion Threat**, **Kidnapping** or **Cyber Extortion** and any related **Extortion Threat**, **Kidnapping** or **Cyber Extortion**, or a series of related **Extortion Threats**, **Kidnappings** or **Cyber Extortions**;

(c)   Applicable to Insuring Clause 3 as set forth in Item 2(C) of the Declarations for this coverage section: for all **Expenses** arising from one **Extortion Threat**, **Kidnapping**, **Cyber Extortion**, **Hijacking**, **Political Threat** or **Wrongful Detention** and any related **Extortion Threat**, **Kidnapping**, **Cyber Extortion**, **Hijacking**, **Political Threat** or **Wrongful Detention,** or a series of related **Extortion Threats**, **Kidnappings**, **Cyber Extortions**, **Hijackings**, **Political Threats** or **Wrongful Detentions**;

(d)   Applicable to Insuring Clause 4:

(i)   If an **Insured Person** suffers a covered **Mutilation**, the Company's maximum liability for such **Mutilation** shall be the amount equal to the percentage, set

FIC001388

forth in Item 2(D)(iii) of the Declarations for this coverage section, of the **Loss of Life Benefit Amount**;

(ii)   If an **Insured Person** suffers a covered **Accidental Loss** (other than **Mutilation** or **Loss of Life**), the Company's maximum liability for such **Accidental Loss** shall be the amount equal to the percentage, set forth in Item 2(D)(iv) of the Declarations for this coverage section, of the **Loss of Life Benefit Amount**;

(iii)  If an **Insured Person** suffers a covered **Loss of Life**, the Company's maximum liability for such **Loss of Life** shall be the **Loss of Life Benefit Amount**;

(iv)   If an **Insured Person** suffers more than one covered **Accidental Loss**, the Company's maximum liability for all such **Accidental Loss** shall be calculated based on (i), (ii) and (iii) above; provided that in no event shall the Company's maximum liability for all such **Accidental Loss** exceed the **Loss of Life Benefit Amount**; or

(v)    If more than one **Insured Person** suffers covered **Accidental Loss** resulting from the same **Kidnapping, Wrongful Detention, Extortion Threat, Political Threat** or **Hijacking**, the Company's maximum liability for all such **Accidental Loss** shall be calculated based on (i), (ii), (iii) and (iv) above; provided that in no event shall the Company's maximum liability for all such **Accidental Loss** exceed the **Event Benefit Amount**, which shall be divided proportionately among such **Insured Persons**; or

(e)   Applicable to Insuring Clause 5 as set forth in Item 2(E) of the Declarations for this coverage section: for all **Legal Liability Costs** arising from one **Kidnapping, Hijacking, Wrongful Detention** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**) and any related **Kidnapping, Hijacking, Wrongful Detention,** or **Extortion Threat** (as described in subparagraph (a) of the definition of **Extortion Threat**), or a series of related **Kidnappings, Hijackings, Wrongful Detentions** or **Extortion Threats** (as described in subparagraph (a) of the definition of **Extortion Threat**).

The Company's maximum liability for all **Recall Expenses** shall be the Sublimit as set forth in Item 2(C)(i) of the Declarations for this coverage section. Such amount shall be part of, and not in addition to, the Limit of Liability as set forth in Item 2(C) of the Declarations for this coverage section.

The Company's maximum liability for all rest and rehabilitation expenses (as described in subparagraph (a)(xv) of the definition of **Expenses**) shall be the Sublimit as set forth in Item 2(C)(ii) of the Declarations for this coverage section. Such amount shall be part of, and not in addition to, the Limit of Liability as set forth in Item 2(C) of the Declarations for this coverage section.

The Company's liability under this coverage section shall apply only to that part of each loss which is in excess of the applicable Retention set forth in Item 4 of the Declarations for this coverage section.

*Executive Protection Portfolio*<sup>SM</sup>

**Kidnap/Ransom and Extortion Coverage**
**Section**

### Non-Accumulation of Liability

13.  When there is more than one **Insured**, the maximum liability of the Company for loss sustained by any or all **Insureds** shall not exceed the amount for which the Company would be liable if all losses were sustained by any one **Insured**.

Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, whether under this coverage section, any prior bond or policy, or any renewal or replacement of this coverage section, the liability of the Company with respect to any loss shall not be cumulative from year to year or from policy period to policy period.

### Loss Sustained

14.  A loss shall be deemed to have been sustained under:

(a)  Insuring Clause 1, at the time of the surrender of the ransom or extortion payment;

(b)  Insuring Clause 2, at the time of the actual destruction, disappearance, confiscation or unlawful taking of the property or other consideration;

(c)  Insuring Clause 3, at the time of the payment of incurred **Expenses** by the **Organization**;

(d)  Insuring Clause 4, at the time of the **Accidental Loss**; or

(e)  Insuring Clause 5, at the time the **Organization** has made payment for any incurred expense, judgment or settlement.

### Personal Assets

15.  In the event of a ransom or extortion demand directed against an **Insured Person** rather than against an **Organization**, property or other consideration surrendered or intended to be surrendered by or on behalf of such **Insured Person** and the following **Expenses**: subparagraphs (a)(i) through (a)(x) and (a)(xiii) through (a)(xv) of the definition of **Expenses**; incurred by or on behalf of such **Insured Person** shall, at the option of such **Organization**, be considered property or other consideration surrendered or intended to be surrendered on behalf of such **Organization** and **Expenses** incurred by such **Organization**.

### Proof of Loss and Legal Proceedings

16.  Knowledge possessed by, or discovery by, any **Executive** shall be deemed knowledge possessed by, or discovery by, all **Insureds**.

It is a condition precedent to coverage that at the earliest practicable moment after the occurrence of any loss hereunder the **Organization** shall give the Company (or a licensed agent of the Company in the state of New York) written notice thereof, with sufficient information to identify the **Organization** and shall within four (4) months after such occurrence furnish to the Company affirmative proof of loss with full particulars.

FIC001390

No **Insured** shall institute legal proceedings against the Company for recovery of any loss under this coverage section after the expiration of a period of two (2) years, or any minimum period of time required by law, immediately following the time such loss was sustained.

### *Valuation and Foreign Currency*

17.   The Company shall pay:

(a)   the least of:

  (i)   the actual market value of lost, damaged or destroyed securities at the closing price of such securities on the business day immediately preceding the day on which a loss is discovered;

  (ii)   the cost of replacing securities; or

  (iii)   the cost to post a Lost Instrument Bond;

(b)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(c)   the least of:

  (i)   the actual cash value of any other property or other consideration at the time of loss; or

  (ii)   the actual cost to repair or replace such other property or consideration with that of similar quality and value; or

(d)   the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is discovered.

### *Recoveries*

18.   Recoveries for any loss covered under this coverage section, whether effected by the Company or by an **Insured**, less the cost of recovery, shall be distributed as follows:

(a)   first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

(b)   second, to the Company for the amount of such loss paid to an **Insured** as covered loss;

(c)   third, to an **Insured** for the Retention applicable to such loss;

(d)   fourth, to an **Insured** for the amount of such loss not covered under this coverage section.

Recovery from reinsurance or indemnity of the Company shall not be deemed a recovery hereunder.

*Executive Protection Portfolio* [SM]
**Kidnap/Ransom and Extortion Coverage**
**Section**

**Other Insurance**

19. If any loss covered by this coverage section is insured under any other valid and collectible insurance policy(ies), prior or current, then this coverage section shall cover such loss, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such loss is in excess of the amount of the applicable retention (or deductible) and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided in this coverage section.

14-02-7308NY (Ed. 1/2004)          Page 17 of 17

FIC001392

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8212-1392

Issued to: MEDIDATA SOLUTIONS INC.

AMEND DEFINITION OF HIJACKING ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Hijacking**, as defined in Subsection 6 Definitions of this coverage section is amended to read in its entirety as follows:

> **Hijacking** means the unlawful detention of an **Insured Person** (other than a **Kidnapping**) by violence or threat of violence by a person or group, where such unlawful detention:
>
> (a)   occurs while traveling on or in an aircraft, watercraft, railroad car or motor vehicle for a period in excess of four (4) hours; or
>
> (b)   occurs while traveling on or in an aircraft, watercraft, railroad car or motor vehicle and results in such **Insured Person's Loss of Life**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-11774 (02/2013)          Page 1

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014          Federal Insurance Company

                                               Endorsement/Rider No. 2

                                               To be attached to and
                                               form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

THREAT RESPONSE EXPENSE COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     This coverage section is amended to include the following Insuring Clause:

        Threat Response Expense Coverage Insuring Clause 7

        The Company shall reimburse the **Parent Organization** for **Threat Response Expenses** paid by an **Organization** or an **Insured Person** resulting directly from a **Threat**.

(2)     Solely with respect to loss covered under Insuring Clause 7 Threat Response Expense Coverage, Item 4 of the Declarations for this coverage section is amended to read in its entirety as follows:

        Item 4.  Retention: $0

(3)     Subsection 6 Definitions of this coverage section is amended to include the following terms:

        **Threat** means a threat or threats made solely and directly against an **Organization** or an **Insured Person** to:

        (a)     commit a **Kidnapping** of, do bodily harm to, or wrongfully abduct or detain any **Insured Person**; or

        (b)     damage, destroy or **Contaminate** any **Property**,

        by a person or group, whether acting alone or in collusion with others.

        All such threats:

        (i)     related by a common committed, attempted or threatened act; or

        (ii)    made contemporaneously against the same **Organization** or the same **Insured Person**, or involving the same **Insured Person** or **Property**,

        will be deemed to constitute a single **Threat**.

        **Threat Response Expenses** means, solely in connection with a **Threat**, only the reasonable fees and expenses for or cost of:

14-02-11797NY (03/2008)          Page 1

    (a)      assessment of such **Threat** by The Ackerson Group;

    (b)      security guard services for the threatened **Insured Person** or **Property** provided by The Ackerson Group.

(4)     No coverage will be available under Insuring Clause 7 Threat Response Expense Coverage of this coverage section for loss:

    (a)      resulting from fraud by an **Insured Person**, whether acting alone or in collusion with others;

    (b)      unless the **Threat** occurs prior to:

        (i)     termination of this coverage section as to any applicable **Insured** and is discovered and communicated in writing to the Company, or a licensed agent of the Company in the state of New York, as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination;

        (ii)    termination of any Insuring Clause or termination of any particular coverage offered under any Insuring Clause and is discovered and communicated in writing to the Company, or a licensed agent of the Company in the state of New York, as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination; or

        (iii)   termination of this coverage section in its entirety and is discovered and communicated in writing to the Company, or a licensed agent of the Company in the state of New York, as soon as practicable, but in no event later than sixty (60) days following the effective date of such termination.

(5)     Subsection 12 Limits of Liability and Retention of this coverage section is amended to include the following:

The Company shall only be liable for a **Threat** that first occurs during the **Policy Period**.

The Company's maximum liability shall not exceed $3,000,000 for all **Threat Response Expenses** arising from one **Threat** and any related **Threat**, or a series of related **Threats**.

(6)     A loss shall be deemed to have been sustained under Insuring Clause 7 Threat Response Expense Coverage of this coverage section at the time of the payment of incurred **Threat Response Expenses** by the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-11797NY (03/2008)        Page 2

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

CONSULTANT FEES ENDORSEMENT

In consideration of the premium charged, it is agreed that the Expense Coverage provided pursuant to Insuring Clause 3 of this coverage section shall be subject to the applicable Limit of Liability as stated in Item 2.(C) of the Declarations; provided, however, in the event the **Parent Organization** shall select The Ackerman Group as any of the following (as such terms are used within the definition of **Expenses**):

      (i)      independent negotiator or consultant;
      (ii)     independent forensic analyst;
      (iii)    independent security consultant; or
      (iv)    independent network security consultant;

then the fees and expenses for and costs of any of the above, when provided by The Ackerman Group shall be deemed reasonable and unlimited and shall not be subject to the Limit of Liability applicable to Insuring Clause 3.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-12302 (08/2006)        Page 1

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

AMEND BENEFICIARY SUBSECTION TO INCLUDE DOMESTIC PARTNER ENDORSEMENT

In consideration of the premium charged, it is agreed that Subparagraph (a) of the second paragraph of
Subsection 10., Beneficiary, of this coverage section is deleted and replaced with the following:

      (a)    to the spouse or domestic partner;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

Authorized Representative

14-02-15293 (08/2009)          Page 1

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

AMEND DEFINITION OF EMPLOYEE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The term **Employee,** as defined in Subsection 6., Definitions, of this coverage section, is amended to
         include any natural person independent contractor while in the regular service of an **Organization** in
         the ordinary course of such **Organization's** business, pursuant to a written contract between such
         **Organization** and such natural person independent contractor for services (a "Contractual
         Independent Contractor").

(2)     The term **Employee,** as defined in Subsection 6., Definitions, of this coverage section is amended by
         deleting the last paragraph thereof and replacing it with the following:

         **Employee** shall not mean any agent, broker, factor, commission merchant, consignee, contractor,
         independent contractor (other than a Contractual Independent Contractor), subcontractor or other
         similar representative.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.



Authorized Representative

14-02-16655 (12/2009)                Page 1

FIC001398

**ENDORSEMENT/RIDER**

Coverage Section: Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014          Federal Insurance Company

                                               Endorsement/Rider No. 6

                                               To be attached to and
                                               form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

BUSINESS INCOME COVERAGE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     This coverage section is amended to include the following Insuring Clause:

        Business Income Coverage Insuring Clause

        The Company shall pay the **Parent Organization** for actual **Business Income** loss sustained by
        an **Organization** resulting from the actual suspension of **Operations** during the **Period of
        Restoration.**

        Such actual suspension of **Operations** must result solely and directly from:

        (a)     a **Kidnapping, Hijacking, Political Threat** or **Wrongful Detention;**

        (b)     an **Extortion Threat** described in subparagraph (a) or (b) of the definition of
                **Extortion Threat;**

        (c)     a **Cyber Extortion** described in subparagraph (a) of the definition of **Cyber
                Extortion,** provided that the reasonable investigation described in the definition
                of **Cyber Extortion** conducted to reasonably determine that the threat is
                technologically credible must be conducted by The Ackerson Group, Inc.; or

        (d)     an order by a civil authority prohibiting access to the **Premises** because of a
                threat against a real property adjacent to the **Premises.**

(2)     Subsection 6 Definitions of this coverage section is amended to include the following terms:

        **Business Income** means:

        (a)     the sum of:

                (1)     net profit before income taxes that would have been earned by the
                        **Organization** had no actual suspension of **Operations** described in the
                        Business Income Coverage Insuring Clause occurred;

                (2)     the actual cost of continuing, on a curtailed basis, business activities of
                        the **Organization** that are necessary for the **Organization** to resume
                        **Operations** with substantially the same quality of service that existed

immediately preceding the actual suspension of **Operations** described in the Business Income Coverage Insuring Clause; and

(3)   reasonable expenses that would not have been incurred had no actual suspension of **Operations** described in the Business Income Coverage Insuring Clause occurred and that were incurred by the **Organization** for the sole purpose of reducing loss described in (a)(1) and (a)(2) above, not to exceed the amount of the actual reduction of such loss;

(b)   less the sum of:

(1)   all recoveries, insurance, suretyship and other indemnity which would cover loss described in (a) above in the absence of this coverage; and

(2)   the amount by which the **Organization** fails to reduce loss described in (a) above through any reasonable measures.

**Operations** means normal business activities of the **Organization** at the **Premises** directly affected by the event described in subparagraph (a), (b), (c) or (d) of the Business Income Coverage Insuring Clause and existing prior to such event.

**Period of Restoration** means the period of time that:

(a)   begins six (6) hours following the actual suspension of **Operations** described in the Business Income Coverage Insuring Clause; and

(b)   ends on the earlier of:

(1)   the date such **Operations** are restored, with due diligence and dispatch, to the condition that existed prior to the event described in subparagraph (a), (b), (c) or (d) of the Business Income Coverage Insuring Clause; or

(2)   thirty (30) days after the actual suspension of **Operations** described in the Business Income Coverage Insuring Clause.

Termination of this coverage section will not reduce the **Period of Restoration**.

(3)   Subsection 12 Limits of Liability and Retention of this coverage section is amended to include the following:

The Company shall only be liable for an actual suspension of **Operations** that first occurs during the **Policy Period**.

The Company's maximum liability shall not exceed $3,000,000 for all **Business Income** loss arising from one event described in subparagraph (a), (b), (c) or (d) of the Business Income Coverage Insuring Clause, or any related event(s) described in subparagraph (a), (b), (c) or (d) of the Business Income Coverage Insuring Clause, or a series of related events described in subparagraph (a), (b), (c) or (d) of the Business Income Coverage Insuring Clause.

(4)   A loss shall be deemed to have been sustained under the Business Income Coverage Insuring Clause of this coverage section at the time income would have been earned and at the time of the payment of incurred costs and expenses by the **Organization**.

14-02-18396 (10/2013)         Page 2

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Coverage Section:   Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:   Federal Insurance Company

Endorsement No. 7

To be attached to and
form a part of Policy No. 8212-1392

Issued to:   MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF RELATIVE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The term **Relative**, as defined in Subsection 6 Definitions of this coverage section, is amended to include
**Domestic Partners**.

(2)     Subsection 6 Definitions of this coverage section is amended to include the following term:

> **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of
> any applicable federal, state or local law or under the provisions of any formal program established by the
> **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of
coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

Authorized Representative

14-02-8014 (4/2003)                    Page 1

FIC001402

**ENDORSEMENT**

Coverage Section: Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:  Federal Insurance Company

Endorsement No. 8

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF WRONGFUL DETENTION ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Wrongful Detention**, as defined in Subsection 6 Definitions of this coverage section, is amended to read in its entirety as follows:

> **Wrongful Detention** means the wrongful involuntary confinement of an **Insured Person** (other than a **Kidnapping** or **Hijacking**) by a person or group, for a period of not less than four (4) hours.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

14-02-8753 (8/2003)                      Page 1

FIC001403

**ENDORSEMENT**

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement: June 25, 2014

Company:  Federal Insurance Company

Endorsement No. 9

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

CORPORATE CHILD ABDUCTION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      This coverage section is amended to include the following Insuring Clause:

Corporate Child Abduction Expense Coverage Insuring Clause 8

The Company shall reimburse the **Parent Organization** for **Corporate Child Abduction Expenses** paid by an **Organization** or a **Child's** parents resulting directly from a **Corporate Child Abduction**.

(2)      Subsection 6 Definitions of this coverage section is amended to include the following terms:

**Child** means any natural person less than ten (10) years of age.

**Corporate Child Abduction** means the wrongful abduction of a **Child** from the **Premises** by a person other than a **Relative** of such **Child**.

**Corporate Child Abduction Expenses** means only the reasonable fees and expenses for or cost of:

(i)       services rendered by a representative of The Ackerman Group, Inc.;

(ii)      travel and accommodations of the **Child's** parents;

(iii)     an independent public relations consultant;

(iv)     publicity incurred by an **Organization** to locate the **Child**;

(v)      psychiatric services for the **Child's** parents during the **Corporate Child Abduction** and for a period of up to thirty (30) days following the **Child's** release or **Loss of Life**;

14-02-8806A (2/2005)REV.            Page 1

(vi)    a reward paid by an **Organization** to a natural person who provides information not otherwise available leading to the arrest and conviction of the person(s) responsible for such **Corporate Child Abduction**;

(vii)    reasonable expenses of rest and rehabilitation, including meals and recreation, for up to thirty (30) days, when such expenses are incurred within twelve (12) months following the **Child's** release; or

(viii)    other reasonable expenses incurred by an **Organization**, subject to the Company's prior written approval.

(3)    Solely with respect to a **Corporate Child Abduction**, the term **Relative** as defined in Subsection 6 Definitions of this coverage section is amended to read in its entirety as follows:

    **Relative** means a parent, step-parent or agent of a parent, guardian, sibling or ancestor (lineal or otherwise) of a **Child**.

(4)    Subsection 12 Limits of Liability and Retention of this coverage section is amended to include the following:

    The Company shall only be liable for a **Corporate Child Abduction** that first occurs during the **Policy Period**.

    The Company's maximum liability shall not exceed $1,000,000 for all **Corporate Child Abduction Expenses** arising from one **Corporate Child Abduction** and any related **Corporate Child Abduction**, or a series of **Corporate Child Abductions**.

(5)    A loss shall be deemed to have been sustained under Insuring Clause 8 Corporate Child Abduction Expense Coverage of this coverage section at the time of the payment of incurred **Corporate Child Abduction Expenses** by the **Organization**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____

Authorized Representative

FIC001405

**ENDORSEMENT/RIDER**

Coverage Section:  Executive Protection Portfolio Kidnap/Ransom & Extortion Coverage Section (Fed - NY)

Effective date of
this endorsement/rider: June 25, 2014                    Federal Insurance Company

Endorsement/Rider No. 10

To be attached to and
form a part of Policy No. 8212-1392

Issued to:  MEDIDATA SOLUTIONS INC.

---

AMEND DEFINITION OF EXPENSES ENDORSEMENT

In consideration of the premium charged, it is agreed that subparagraph (a)(v) of the term **Expenses** as defined in Subsection 6 Definitions of this coverage section is amended to read in its entirety as follows:

(v)      independent security guard services for up to ninety (90) days;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

14-02-8900 (02/2008) rev.            Page 1

FIC001406