**File Note Title:**Challenge Response
**Create Date:**2/2/2015 11:24 AM
**Author:**MIKE MAILLET
**File Note Text:**

From: Michael Maillet/ChubbMail
To: Robin Cohen <RCohen@kasowitz.com>
Cc: Michael Otner <motner@mdsol.com>, James Gaudette <jgaudette@wgains.com>
Date: 01/30/2015 05:44 PM
Subject: Medidata-Crime Loss

Dear Ms. Cohen:

Please see the attached copy of correspondence with reference to the above matter.

Michael Maillet
Senior Claim Examiner
Chubb & Son, a division of Federal Insurance Company
Specialty Claim Service Center, 82 Hopmeadow Street, Simsbury, CT 06070-7683
Phone: (212) 612-2484 | Fax: (855) 382-1349 | mmaillet@chubb.com
[attachment "R.Cohen-1-30-15.pdf" deleted by Michael Maillet/ChubbMail]

000000339763



**CHUBB GROUP OF INSURANCE COMPANIES**
Specialty Claim Service Center
82 Hopmeadow Street
Simsbury, CT 06070-7683
Phone: (212) 612-4000

Direct Dial (212) 612-2484

January 30, 2015

*Via e-mail and first-class mail*
Robin L. Cohen, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, NY 10019-6799

Re:

| | |
|---|---|
| Insured: | Medidata Solutions, Inc. ("Medidata") |
| Policy No.: | 8212-1392 |
| Insured: | Federal Insurance Company ("Federal") |
| Ref. No.: | 339763 |
| Matter: | Medidata-Crime loss tender |

Dear Ms. Cohen:

This is in reference to your January 13, 2015 letter, in which you expressed disagreement on behalf of your client, Medidata, with Federal's coverage position as set forth in our December 24, 2014 correspondence. Federal has carefully considered the issues raised in your letter, but must reaffirm its position that Medidata's loss is not covered by the Crime Coverage Section of the Executive Protection Portfolio Policy (the "Policy") for the reasons previously advised and as further discussed below.

Your letter begins with a discussion of the Computer Fraud Coverage of the Policy, and particularly sub-paragraphs (a) and (b) of the definition of **Computer Violation**, which provide:

    **Computer Violation** means the fraudulent:

    (a) entry of **Data** into or deletion of **Data** from a **Computer System**;

    (b) change to **Data** elements or program logic of a **Computer System**, which is kept in
        machine readable format.

Your letter states that the persons who sent the e-mail purporting to be from ████████ doctored the "From" line of the e-mail and by doing so, fraudulently entered **Data**, and/or changed **Data** elements. You further state that "the perpetrators of the fraud manipulated Medidata's email system and created an email on employee computers that was completely unauthorized." Federal is unaware of any evidence of unauthorized access to Medidata's **Computer System**, manipulation of Medidata's e-mail system (which simply received e-mail from a sender), or that the "From" line of the subject e-mail was altered. Rather, as it was explained to us by Medidata, it is our understanding that third parties created entirely new e-mail, outside of the Medidata e-mail system, inserted an e-mail address (that gave the appearance that the sender was ████████) into a blank "From" box, and then sent the e-mail to Medidata in the same manner as any other e-mail sent to Medidata.

Sub-section (a) of the definition of **Computer Violation** expressly requires the fraudulent entry of **Data** into or deletion of **Data** from a **Computer System**. Consistent with Federal's coverage position in this

00000339763

matter, Federal's counsel has advised that the following authorities demonstrate that this language requires a hacking incident: *Universal Am. Corp. v. Nat'l Union Fire Ins. Co.*, 38 Misc. 3d 859 (N.Y. Sup. Ct. 2013), *aff'd*, 110 A.D.3d 434 (1st Dep't, 2013)(which, counsel advises us, at page 434 states that the "plain meaning of defendant's computer systems fraud rider, covering loss from a fraudulent 'entry of electronic data' or 'change of electronic data' within the insured's proprietary computer system, was intended to apply to wrongful acts in manipulation of the computer system, i.e., by hackers, and did not provide coverage for fraudulent content...."), *leave to appeal granted*, 23 N.Y. 3d 904 (2014); *Pestmaster Servs. Inc. v. Travelers Cas. & Sur. Co.*, 2:13 cv-5039 (JFW MRWX), 2014 WL 3844627 (C.D. Cal. July 17, 2014)(which, counsel advises us, at page *7 indicates that the conduct at issue "does not constitute 'Computer Fraud' as defined by the Policy because the transfer of funds was at all times authorized and did not involve hacking or any unauthorized entry into a computer system"); and Randall I. Marmor & Susan Koehler Sullivan, *Commercial Crime Insurance Coverage*, Ch. VII ("Computer and Funds Transfer Fraud")(ABA, 2015)(which counsel advises us, at page 299 indicates that "[t]he requirement that the insured prove a fraudulent entry of data or change to data which caused money to be paid or delivered distinguishes between a circumstance where a hacker gain[s] access and control over the insured's systems and a circumstance where the insured knowingly transfers money based upon a fraudulent e-mail. The latter, given the obligation to prove a fraudulent entry of data or change to data which caused money to be paid or delivered, is not covered"). Our understanding is that no such hacking incident occurred in this matter.

Similarly, sub-section (b) of the definition of **Computer Violation** requires a change to **Data** elements or program logic of a **Computer System**. Your letter asserts that **Data** elements in the "From" box were changed, but it is our understanding that the "From" box was populated by third parties before the e-mail was sent to Medidata. We are not aware of any facts that indicate that the name of the e-mail sender in the "From" box was changed and we do not agree that the act of sending e-mail constitutes a change to **Data** elements or program logic of a **Computer System**, owned and operated, leased and operated or utilized by Medidata, as the Policy expressly requires.

Your letter also states that it is immaterial that the misrepresented information arrived via an e-mail inbox and that "[f]raud is often perpetrated by sending false instructions through the mail, over wire, or, in modern times, through email." This argument, we believe, is consistent with and supportive of Federal's position. While fraud schemes, like the scheme at issue in the present matter, can be carried out in a wide variety of ways, the mere fact that this scheme was advanced, in part, by using e-mail does not cause it to be covered under the Computer Fraud Coverage. Rather, the Computer Fraud Coverage expressly requires fraudulent entry of **Data** into or deletion of **Data** from a **Computer System** or a fraudulent change to **Data** elements or program logic of a **Computer System**.

Federal also disagrees with your contention that Insuring Clause (F): Funds Transfer Fraud Coverage is implicated by this matter. We are aware of no authority supporting your position that the wire instructions sent by Medidata's employees to its bank were not sent by Medidata or otherwise without Medidata's knowledge and consent. Among other things, it should be noted that the employee who actually authorized the transfer of funds in the online banking system had been delegated authority by the insured to approve such transfers on its behalf. Federal's counsel has advised that the following authorities are supportive of Federal's position in this regard: *Cumberland Packing Corp. v. Chubb Ins. Corp.*, 29 Misc. 3d 1208(A), 1208A, 958 N.Y.S.2d 306, 2010 N.Y. Misc. LEXIS 4881, 2010 NY Slip Op 51754(U) (N.Y. Sup. Ct. 2010)(no coverage under a Funds Transfer Fraud Insuring Agreement for an insured's losses that occurred after it voluntarily wire transferred funds to Bernie Madoff for investment purposes) and *Pestmaster Servs., Inc. v. Travelers Cas. & Sur. Co., supra* ("The Funds Transfer Fraud Insuring Agreement does not cover authorized or valid electronic transactions, such as the authorized ACH transfers in this case, even though they are, or may be, associated with a fraudulent scheme").

3

Your letter also disputes our position with respect to the Forgery Coverage Insuring Clause, which states:

> The Company shall pay the **Parent Organization** for direct loss sustained by an **Organization** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party** . . . .

Your letter does not assert that the subject e-mail was a **Financial Instrument**. However, your letter disputes that the above language requires that a **Forgery** must be on a **Financial Instrument**, and asserts that "either a **'Forgery'** or an 'alteration of a **Financial Instrument**' is sufficient." We do not agree that this is a reasonable interpretation of the Insuring Clause or that the Insuring Clause is in any way ambiguous. We are likewise unaware of any authority that supports your position. Federal's counsel has suggested that we refer you to the following cases as examples in which similar forgery or alteration language was held to require forgery of the specific types of documents mentioned in the insuring clause: *Parkans International LLC v. Zurich Ins. Co.*, 299 F. 3d 514 (5th Cir., 2002); *Vons v. Federal Ins. Co.*, 57 F. Supp. 2d 933, 945 (C.D., Cal, 1998), *aff'd*, 212 F.3d 489 (9th Cir., 2000); and *Metro Brokers, Inc. v. Transp. Ins. Co.*, 2013 WL 7117840, at *5 (N.D. Ga. Nov. 21, 2013).[1]

For the reasons outlined above and in our prior letter dated December 24, 2014, Federal respectfully maintains its declination of coverage for the claim submitted by Medidata under the Policy. If you would like to discuss any of the foregoing in greater detail or if you believe that there are additional facts that we should consider please let us know.

This letter is not intended to waive any of Federal's rights or defenses, which it may now have and which may hereafter accrue by reason of the terms and conditions of the above captioned Policy, or otherwise. All of Federal's rights and defenses are specifically reserved.

Very truly yours

Chubb & Son
A division of Federal Insurance Company
Manager

Michael A. Maillet, Esq.
New York Specialty Claims

cc.: via e-mail

Michael Otner, Esq.
General Counsel
Medidata Solutions, Inc.
350 Hudson Street
9th Floor
New York, NY 10014

---

[1] While Federal's discussion of the Forgery coverage in this letter is limited to the specific points raised in your letter, please note that Federal does not concede the underlying assumptions in your letter such as, for example, the assumption that the unsigned e-mail contains a Forgery or that the Organization sustained a direct loss resulting from Forgery of a Financial Instrument.

000000339763

James W. Gaudette, Esq.
Vice President & Executive Risk Claims Counsel
William Gallagher Associates
470 Atlantic Avenue
Boston, MA 02210

000000339763